# PETITION OF CONRAD NICKLAS, ET AL.

APPEAL BY J. M. KALTENBAUGH ET AL. FROM THE COURT OF QUARTER SESSIONS OF BUTLER COUNTY.

Argued October 20, 1891—Decided January 4, 1892.

1. Under paragraph I., § 23, act of May 8, 1854, P. L. 617, relating to the common-school system, it is the duty of the board of school directors of a district, to provide schools for those who may actually "apply for admission and instruction, either in person, or by parent, guardian, or next friend."
2. That a board of directors disregard the demand by a committee representing the inhabitants of a village in the district, to provide generally "for the children or scholars of said village," does not render them liable to be dismissed from office, under the provisions of § 9 of said act.*

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

---

* The question of the right to an appeal and certiorari, for the review of the case on its merits, was not raised.

No. 113 October Term 1891, Sup. Ct.; court below, number and term not shown.

On November 7, 1890, Conrad Nicklas, J. L. Christie, and about forty-nine others, presented their petition to the Court of Quarter Sessions averring that they were taxable citizens of Connoquenessing township school district in said county, and further:

" 1. That the board of school directors of said district, to wit., W. J. Fletcher, A. G. Stewart, J. M. Kaltenbaugh, C. Shannon, John Welsh and Matthew Shannon, although often requested to do so by your petitioners and others, have wholly neglected and refused to establish and keep in operation a sufficient number of common schools in the said school district of Connoquenessing township, for the education of the persons in the said district over the age of six years and under the age of twenty-one years, who have applied to said board of school directors for admission to and instruction therein.

" 2. Your petitioners further represent that the village of Petersville, with a population of over two hundred inhabitants, where a majority of your petitioners reside, is within the bounds of schoolhouse No. 5 in said school district of Connoquenessing township, and that the said village of Petersville is a distance of one and one quarter miles from said schoolhouse No. 5.   That schoolhouse No. 5 is too small to seat more than forty-five scholars, while the children or scholars between the lawful ages of six and twenty-one years number over sixty, who reside in the village of Petersville alone, all desiring to go to school, and have no provision made for them.   That the said village of Petersville is situate in the midst of an oil field, is daily increasing in population, and has at the present time a sufficient number of scholars of lawful age to fill one school.

" 3. The nearest schoolhouse in Connoquenessing township, after No. 5, to the village of Petersville is schoolhouse No. 4, which is distanced two and one half miles from said village, and it is also filled with scholars of legal age within its bounds. That the board of school directors of said township had a meeting of their board on October 18th, inst., at which meeting J. L. Christie and Conrad Nicklas, two of your petitioners, who represented the citizens of Petersville, were present, and

at said meeting asked said school board, in substance, to make provision to instruct the children or scholars of said village in the branches taught in the common schools of the state of Pennsylvania, and of lawful age. That said board of school directors, refused to make, and still refuse to make any provision for your petitioners.

"Your petitioners, therefore, pray the said court to declare the seats of the said school directors vacant, and that they be removed from office, and that the court appoint others in their places, and to make such other order in the premises as to the court may seem proper."

In response to a rule to show cause granted, the board of school directors, by its president, on November 28, 1890, made answer as follows:

"1. Respondents deny paragraph first of the petition upon which rule to show cause was granted in this case, and in further answer thereto aver and will be able to prove that the school directors of said township have established and do now, and have maintained and kept in operation a sufficient number of common schools in said district, for the education of all persons therein of lawful age, and all who have applied for admission and instruction therein.

"2. It is admitted that some of the children in the village of Petersville of lawful age have perhaps about one mile or a trifle over to travel in attending school at No. 5, their proper district, where the children from said village have always attended school; but it is denied that there is only room for forty-five scholars in said schoolhouse. The present seating capacity of said house is for eighty scholars and upwards, and the said house was arranged for the accommodation of this number before respondents knew of the petition in this case; and respondents aver that there is now and has been ample provision made for the accommodation of all children of lawful age in said district, where they can receive instruction if they will apply, and all allegations in said second paragraph to the contrary are denied.

"3. That the average attendance in said district for the month of October, 1890, was thirty-nine scholars; whole number enrolled sixty-six scholars. For the current month of November, the entire enrollment to this date is seventy-five scholars,

with an attendance showing very nearly the same average as the preceding month.

"4. It may be that the oil excitement in the vicinity of Petersville has brought into that neighborhood a floating population that comes and goes with the tide, but it is denied that even any of this population has applied for admission and instruction who have been refused; and respondents further submit in this answer that, under the law, a floating population such as some of the petitioners are, have no claims upon the school board for admission and instruction, although respondents have even made provision for them in the present case.

"5. That respondents have made ample provision for all the children within said district over six years and under twenty-one years old, where they may be admitted and instructed according to law.

"6. It is denied that J. L. Christie and Conrad Nicklas at a meeting of the school board, October 18, 1890, representing the citizens, asked or requested the school board to make provision for the instruction of the children or scholars of said village which was refused as alleged by petitioners; that any request made was not to furnish sufficient provision for schooling, but to furnish said village with a separate schoolhouse, at which time the enrollment of their proper district was only forty-three scholars, and sufficient provision had already been made.

"7. That, under the present provision made for said district, the establishment of another house, with teacher therein, would not in the opinion of respondents be necessary for the accommodation for school purposes of those residing within said district, and would be impracticable and a useless expense upon the taxpayers, which would be burdensome.

"8. That some of the petitioners do not reside in said district; some of them are without children to send, and some of them never have lived in said district.

"9. It is immaterial to this application what the distance to No. 4 schoolhouse is, or whether the same is full; as there is ample provision under the law made in the proper district, for all the petitioners and others who are entitled to admission and instruction, in No. 5. Respondents therefore ask that the rule be discharged at the cost of petitioners."

Opinion of Court below.

After hearing testimony of witnesses in open court, and argument, the court, HAZEN, P. J., on March 18, 1891, filed the following opinion and decree:

The testimony in this case clearly establishes the following facts:

1. That Connoquenessing township school district is divided into seven sub-districts, with one school building and one school in each.

2. That this school district was sub-divided about 1854 into six sub-districts, and one school building erected in each. That, subsequently one other sub-district was formed, and one school building erected therein. One of these houses at least has been replaced by a new one. That the schoolhouse in sub-district No. 5 has been enlarged by lengthening it, thereby increasing its seating capacity to eighty pupils. That this is all the increase in school accommodations for this entire district since 1854; and during this interval, the population of the entire district has largely increased, and especially so in the southern end of sub-district No. 5, being the sub-district in controversy.

3. That the seating capacity of schoolhouse in sub-district No. 5 is now for eighty pupils.

4. That this is a mixed, not a graded school; and that the total number of names on the roll of pupils attending this school for this school year, is eighty-four, being four more than the total seating capacity of the building. That the teacher for the present school year testifies that he has twenty classes to hear recite each day, and that often he cannot get through during the school day.

5. That the school year is for one continuous term of six months, commencing in the month of October in the several sub-districts in this district.

6. That the tax levy for school purposes in this entire district, is four and one half mills on the dollar of the assessed valuation of property taxable for school purposes.

7. That the average cost per year of maintaining each of said seven schools, is a shade less than sixty-five one hundredths of a mill on the dollar of the assessed value of property in this entire district.

8. That the school term, being for the minimum number of

months allowed by law, commencing in the fall and continuing through the winter, thereby precludes many of the younger children of school age from attending, especially of those who reside a long distance from the school building, as do a very large proportion of the children of a school age in this sub-district.

9. The number of children over six years and under twenty-one years, resident in No. 5, is from one hundred and fifty to one hundred and sixty, more than double the capacity of any one teacher to instruct properly in a mixed school.

10. That of those children, much the larger number reside in the village of Petersville and its immediate vicinity, being in the extreme southern part of said sub-district.

11. That there are at least one hundred and one children, over six years and under twenty-one years of age, entitled to the privileges of the common schools residing in Petersville and within its immediate vicinity, in this sub-district No. 5, Petersville not being an incorporated borough.

12. That the schoolhouse in sub-district No. 5 is fairly well located as to territory, not as to population, and doubtless was as good a location as could have been selected when it was built in 1854, or about that time, and yet answers well for a school for those residing in the northern and central part of this sub-district, where there are enough children of school age to fill one school; but, owing to the very large increase of population in the south end of this sub-district, far beyond the capacity of one school, it is made imperatively necessary that additional, adequate accommodations for this increase be had, properly located, unless these children of school age are to be neglected and deprived of the benefits of the common schools.

13. That the petitioners, numbering fifty-one, as appears by the petition in this case, are all shown to be citizens of sub-school district No. 5; although it is claimed by respondents in their answer that some of them are of a floating population, that comes and goes with the tide, but there was no evidence contradicting the evidence of petitioners that these parties were residents.

14. That residence in the district and fit age are the only requisites to entitle a person to admission to the common schools under the common-school law of Pennsylvania.

15. That the school board had their attention called to this lack of school accommodations in sub-school district No. 5 at different times, but especially so in the fall of 1890. That Dr. J. L. Christie and Conrad Nicklas, on their own behalf and that of others, made known to the school board their wants in relation to school facilities, and requested the board to provide school accommodations adequate to accommodate the children of lawful age, in the southern part of sub-district No. 5. The board answered in writing, as follows: " Connoquenessing township, October 18, 1890 ; action of the board: That whereas the two citizens asking for a new schoolhouse have not come to us according to law, but simply as a request, that we consider it null and void and do nothing in the matter."

This answer of the school board to the request of two citizens, Dr. J. L. Christie and Conrad Nicklas, for themselves and on behalf of their neighbors, admits that a request for enlarged school accommodations was asked by citizens of this sub-district No. 5. It was then their duty under the act of May 8, 1854, § 23, to ascertain the truth of this request, and if found as represented to the board, then to provide the accommodations. The first sub-division of § 23 of said act is mandatory and provides as follows: " They shall establish a sufficient number of common schools for the education of every individual above the age of six and under twenty-one years, in their respective districts, who may apply for admission and instruction, either in person, or by parent, guardian, or next friend." But, instead of honestly investigating the facts upon which this request was predicated, this board coolly replies to the request, " They have not come to us according to law but simply as a request, and we (they) consider it null and void and do nothing in the matter."

Is it true they did nothing? Their answer to the citizens refusing to do anything in the matter bears date October 18, 1890. This petition and order of court thereon is filed November 7, 1890, and the resolution of the school board authorizing the secretary to order six new seats for school No. 5 bears date November 11, 1890.

We find as a fact that they, instead of doing nothing, acted promptly, but not in ascertaining the truth of this request and the necessity for additional school accommodations in the south-

Opinion of Court below.

ern part of sub-district No. 5, but hastened, we might say with indecent haste, to appoint one of their number to go to Butler and procure legal counsel; legal counsel not as to their duty in ascertaining how they should proceed to furnish the much-needed school accommodations, but to find out how they could prevent furnishing the much-needed school accommodations to this large number of children of a school age; and the board seems to have been eminently successful in securing just the kind of legal advice their hasty action indicated that they most wanted. Their answer to the rule in this case, paragraph No. 6, when compared with their answer to the two citizens, under date of October 18, 1890, is in line with this view, and clearly admits that this board did not intend to do their duty, until compelled to do so, or be dismissed from office for neglect of an imperative duty.

16. That, if providing school accommodations, as provided for by the act of May 8, 1854, § 23, was a discretionary duty, not mandatory, then we might reach a different conclusion, but being a mandatory duty it is clear that the prayer of this petition must be granted.

And now, March 18, 1891, the several witnesses having been sworn and examined in open court, and the case argued by learned counsel for petitioners and respondents, and the court being clearly of opinion from the evidence that the board of school directors of Connoquenessing township school district have neglected and refused to establish a sufficient number of schools for the education of every individual between the ages of six and twenty-one years, as the law requires, this rule is made absolute; and the court do declare the seats of the present board of school directors, viz., A. G. Stewart, J. M. Kaltenbaugh, Wm. Fletcher, C. E. Shannon, Matthew Shannon and John Welsh, vacant, and do appoint W. W. Brandon, David McConnell, Greer McCandless, J. L. Christie, Samuel Wright and B. W. Douthett, in their stead, until the next annual election. Exception.[1]

—Thereupon, the respondents took this appeal, specifying that the court erred in the several findings of fact and conclusions of law therefrom, and in entering the final decree.[1]

*Mr. Charles McCandless* (with him *Mr. S. F. Bowser*), for the appellants:

Counsel cited: §§ 9, 23 (I.), act of May 8, 1854, P. L. 617; Wharton v. School D., 42 Pa. 359; Freeman v. School D., 37 Pa. 385; 1 Dillon on Mun. Corp., 58; Derry School D., 2 Pears. 24; Heard v. School D., 45 Pa. 95.

*Mr. John M. Thompson* (with him *Mr. William Thompson* and *Mr. Lev. McQuistion*), for the appellees.

Counsel cited: Bloomsburg School D.'s App., 121 Pa. 293.

OPINION, MR. JUSTICE WILLIAMS:

The act of May 8, 1854, § 23, P. L. 621, makes it the duty of the school directors in each district to establish a sufficient number of common schools for the education of every individual over six and under twenty-one years of age in their respective districts, "who may apply for admission and instruction, either in person, or by parent, guardian, or next friend." The directors are not required to ascertain how many children of the proper age reside in their district. They have no power to compel attendance upon the schools under their charge. Their duty is to take notice of and provide for those who actually apply for admission to the common schools of their district. If they refuse or neglect to make reasonable provision for such applicants, they are guilty of a neglect of their official duty, for which they may be proceeded against in the Court of Quarter Sessions. If, on the other hand, they furnish accommodations for all who apply, they have performed the duty which the act of 1854 imposes. In the performance of this statutory duty, the school directors must decide, in the exercise of their discretion, when a new schoolhouse becomes necessary, and where it should be located. This discretion is not an arbitrary one, to be exercised without regard to the public convenience; but a reasonable one, to be exercised in accordance with the judgment of the school directors. Mistakes in judgment are not always to be avoided, nor are they to be punished by a summary dismissal of the directors from office. The courts do not supervise the discretion of the directors as to the manner in which their duties should be performed, but they take notice of their refusal or neglect to perform them: Heard v. School Dis., 45 Pa. 93.

In the case now before us, it is alleged that a new school-

Opinion of the Court.

house is needed in sub-district No. 5, and that it should be located in the village of Petersville.  The respondents say that the present accommodations are amply sufficient for all who have applied for admission to the school in district No. 5.  Here is an issue of fact on which this case depends.  If the directors have provided for all actual applicants, they have neglected no duty imposed by the act of 1854, and the decree of the court below was wrong.  We have looked into the evidence, and we do not find that any person of the proper age has ever applied at the door of the schoolhouse, or to the directors, who has not been promptly provided for.  Indeed, we do not understand that it is alleged in the petition that any child has ever applied for admission to school No. 5, who has been turned away.  It is said in reply that, while this may be true, yet there are some children who do not attend, and that to accommodate these a new schoolhouse should be built in Petersville.  If this be so, how can the directors be required to take notice of it?  The act of 1854 answers the question.  Those who really wish accommodations in the common school should apply for it " in person, or by parent, or guardian, or next friend."  If it is not furnished by the directors, there will then be ground for a charge of neglect of an official duty.  How and where it shall be furnished is, within reasonable limits, necessarily left to the sound discretion of the directors.

But it is asked, must all these children be driven in a herd to schoolhouse No. 5, to demand admission?  Certainly not.  They may apply at their leisure, in person or by their parent or guardian, and, if without parent or guardian, then by their next friend.  If some are too young to travel the distance between their homes and the schoolhouse, or if the roads have been rendered impracticable for them by heavy hauling over them, these are facts that the parent or guardian may bring to the knowledge of the directors.  How many are there too young to make the journey to the schoolhouse?  Where do they live?  At what point would the largest number of such be best accommodated?  Is the number sufficiently large to justify the erection of a new house, or should temporary accommodations be secured?  These questions must be considered; and, if there is a reasonable necessity thus shown for additional accommodation, it must be provided.

Opinion of the Court.

The petition did not proceed upon this basis. It set out the existence and population of the village of Petersville, its distance from schoolhouse No. 5, and that two of its citizens, J. L. Christie and Conrad Nicklas, as a committee representing the village, had made a formal demand upon the school directors to provide "for the children or scholars of said village." This was an effort on the part of the inhabitants of the village to secure what they regarded as a necessary village improvement. It was not the application of any child or any number of children for admission to the common schools. The inhabitants of Petersville were naturally enough interested in their village, but the directors were bound to provide only for actual applicants for admission to the schools. They should consider the age of proposed pupils, the distance that it is reasonable to require them to travel, the state of the roads, and the convenience of the means of access open to them. They should exercise a sound discretion in view of all the facts and circumstances, and make a reasonable provision for all applicants. By this must be understood actual, not possible, applicants. Whether a schoolhouse is necessary at Petersville, depends on facts that do not appear in the petition in this case, nor yet in the evidence. If they exist, we have no doubt they will be brought to the attention of the directors; nor ought it to admit of doubt that the directors will fairly consider them, and make such provision for the accommodation of all applicants as may be reasonably necessary.

The order of the court below is now set aside, the directors are restored to office, and the petition is dismissed; the costs to be paid by the petitioners.