Catherine Aubrey et al., Appellants, *v.* School District of Philadelphia, Appellee.

Argued November 18, 1981, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*John K. Weston,* for appellants.

*Andrew M. Rosen,* Assistant Counsel, with him *Eugene F. Brazil,* General Counsel, for appellee.

OPINION BY JUDGE CRAIG, December 22, 1981:

Catherine Aubrey and her parents appeal from an order of the Court of Common Pleas of Philadelphia County which dismissed their complaint in trespass against the School District of Philadelphia.

During her senior year of high school, the district required Aubrey to attend a health education class which included coverage of sexual material, and to take an examination on that material. As a result of her grade on the exam, Aubrey failed the health course, and was not permitted to participate in graduation exercises with her class. After successfully completing a summer health course, Aubrey received a high school diploma.

Aubrey and her parents filed a complaint seeking money damages for severe emotional distress and mental anguish, damage to reputation, damage to employment qualifications, and loss of time and wages. They alleged that the district's program: (1) expressly violated Section 1512 of the Public School Code of 1949,[1] because it was not adapted to the age, development, and needs of the pupils; (2) violated the Aubreys' parental rights to make a reasonable selection of the subjects to be studied by their child; (3) breached, without notice, the district's past course of conduct whereby students who failed the health class had participated in graduation ceremonies; (4) was arbitrarily conducted through the "grossly misleading and capriciously graded" examination; (5) deprived Aubrey of liberty and property interests without a hearing; and (6) invaded Aubrey's "right of privacy" under the 9th and 14th Amendments of the Constitution.

The district responded with preliminary objections in the nature of a general demurrer, asserting that the complaint failed to state a claim upon which relief could be granted. Judge WILSON agreed, stating:

Because of the public policy that money damage actions should not lie against a school district for its exercise of educational policy, because no action for money damages lies for educational malpractice, and because of the long line of cases that keeps the courts out of educational policy, this Court is compelled, and has dismissed plaintiffs' Complaint for failure to state a cause of action.

The Aubreys contend that the court's reliance on the educational malpractice doctrine is misplaced; claiming that those cases are limited to allegations of negligence, the Aubreys insist that the district's action

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §15-1512.

amounted to a gross violation of a defined public policy, to be properly remedied through the award of money damages.

We cannot agree.

Of the cases cited by Judge WILSON, *Donohue v. Copiague Union Free School,* 47 N.Y. 2d 440, 418 N.Y.S. 2d 375 (1979) is most clarifying. In disposing of a student's claim for money damages based on the district's alleged failure to teach him English skills, the court distinguished between the two causes of actions present in the case—one alleging a negligent breach of the constitutional duty to educate, and the other sounding in "educational malpractice."

Although the court explored the feasibility of "a legal duty of care flowing from educators, if viewed as professionals, to their students," it also recognized the public policy considerations of those actions, stating:

> To entertain a cause of action for 'educational malpractice' would require the courts not merely to make judgments as to the validity of broad educational policies—a course we have unalteringly eschewed in the past—but, more importantly, to sit in review of the day-to-day implementation of these policies. Recognition in the courts of this cause of action would constitute blatant interference with a responsibility for the administration of the public school system lodged by Constitution and statute in school administrative agencies.

*Donohue* at 445, 418 N.Y.S. 2d at 378.

Our Supreme Court voiced the same concern in *Regan v. Stoddard,* 361 Pa. 469, 65 A.2d 240 (1949), when Philadelphia taxpayers sought injunctions to change courses of study and methods of promoting pupils. Affirming the dismissal of the complaint, the court held that "the discretion of school authorities

will be interfered with only when there is a clear abuse of it, and the burden of showing such an abuse is a heavy one." *Regan* at 473, 65 A.2d at 242, citing *Hibbs v. Arensberg,* 276 Pa. 24, 119 A. 727 (1923).

The present case is clearly outside the realm of "manifestly illegal action . . . violating the express words of statutes defining [the school board's] powers, or . . . bad faith in violation of their public duty," which might justify judicial interference. *Regan* at 473, 65 A.2d at 242. The district's graduation and curriculum requirements are in accordance with state law and regulations,[2] which mandate the successful completion of a health education class.[3]

The courtroom is not the proper forum for resolution of personal conflicts arising from the State Board of Education's 1969 decision to include sex education in the public school curriculum, the district's program to comply with that decision, nor the pupil's failing grade on a test of that subject matter.

ORDER

Now, December 22, 1981, the order of the Court of Common Pleas of Philadelphia County, dated November 3, 1980, No. 4317 June Term, 1979, dismissing the appellants' complaint is affirmed.

---

[2] *See* Section 1319 of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §369, and Title 22 Pa. Code §5.1-§5.153.

[3] Title 22 Pa. Code §5.74(a)(5) states:

Section 5.74. Senior high school requirements.

(a) Planned Courses for Credit. Thirteen planned courses for credit in grades 10, 11, and 12 shall be required for graduation for all students and shall include the following:
. . . .

(5) Health education. Satisfactory completion of the planned program described in §5.25(a) of this title (relating to the health and physical education).