# Alley v. Bellwood Antis School District

*James Bigelow,* for plaintiffs.

*Alan R. Krier,* for Bellwood Antis School District & Louis Bruezzeman.

*John Woodcock,* for additional defendants.

*R. Philip Saylor, Michael Dorezas,* for Applicants I.U. 08 and James M. McDonald.

PEOPLES, *P.J.,* August 19, 1983 — The procedural history of this matter is a long and complicated one involving a substantial number of pleadings filed by all parties. At the risk of over-simplification, we will dispense of a recitation of the history of all pleadings filed and confine this discussion to only those procedural matters having direct bearing on the question now before the court. This action in trespass was initiated when plaintiffs filed their original complaint on December 15, 1975. After response had been made by the various defendants to that original complaint, plaintiffs filed their amended complaint in trespass on March 25, 1976. That amended complaint elicited further . responsive pleading from the various defendants including one by which plaintiffs, Patricia Alley and Paul Alley, were joined as additional defendants.

Motions for summary judgment were filed by defendants, Bellwood-Antis School District and Louis V. Brueggemann, on April 25, 1977, and by defendants, Appalachia Intermediate Unit 08 and Dr. James M. McDonald, on May 25, 1977. Following the filing of briefs and hearing of argument as to those motions for summary judgment, this court on September 25, 1981, filed a dispositional opinion and order denying and dismissing said motions on the ground that plaintiffs' action was not barred by the statute of limitations. Prior to the entry of that order and with the agreement of plaintiffs, this court by its order of January 28, 1980, granted a motion for summary judgment as to defendant, Dr. James M. McDonald, thereby relieving him of any further involvement in the case.

By letter dated December 15, 1981, defendants, Bellwood-Antis School District and Louis V. Brueggemann, requested this court to reconsider its decision regarding the aforementioned motion for summary judgment. Subsequently, on February 4, 1982, the same defendants filed a new formal motion for summary judgment and on February 9, 1982, defendant, Appalachia Intermediate Unit 08, filed another motion for summary judgment. It is these latter motions which are now before this court for disposition.

Pa. R.C.P. 1035, amended and effective April 18, 1975, provides for the entry of summary judgment after all of the pleadings have been closed. If, upon review of all pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, it appears that there is no genuine issue as to any material fact, then the moving party is entitled to summary judgment as a matter of law. The court must accept as true all well-pleaded facts in plaintiff's pleadings as well as any admissions on file

giving to plaintiff the benefit of all reasonable inferences to be drawn thereform. In short, the record must be examined in the light most favorable to the non-moving party. Any doubt as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. Prince v. Pavoni, 225 Pa. Super. 286, 302 A.2d 452 (1973).

To the best of this court's knowledge, this case presents a matter of first impression in the Courts of the Commonwealth of. Pennsylvania. Extensive legal research by counsel for the various parties to this action as well as by the court itself has failed to locate a single decision reported from any Pennsylvania court which is dispositive of or even deals with the issue of whether an action for educational malpractice is cognizable in this state. Due to the dearth of Pennsylvania case law on the subject, both the court and counsel for the parties have had to look to decisions rendered by courts of other jurisdictions. Likewise, due to the uniqueness of the question presented here, this court has given more than the normal amount of study to this case before reaching its decision.

Most recently, the decision of the Court of Appeals of Maryland came to our attention in the case of Doe, et al. v. Board of Education of Montgomery County, 295 Md. 67, 453 A.2d 814 (1982), which involved both a factual and procedural situation strikingly similar to those involved in the instant matter. In sustaining the action of a lower court in granting summary judgment for defendant school board, school superintendent, former school superintendent, county health department and two psychologists in the employ of that health department, the Maryland court specifically refused to recognize educational malpractice as an actionable tort. In the

Doe case, supra, a former public school student and his parents claimed money damages for negligent evaluation and placement of the student who was learning disabled.

The Doe decision, supra, was preceded by at least one other case in the courts of Maryland wherein recognition was refused for a cause of action sounding in educational malpractice. In that case, Hunter v. Board of Education, Montgomery County, 292 Maryland 481, 439 A.2d 582 (1982), the Court of Appeals of Maryland cited at least six reasons for its refusal to recognize such a cause of action:

1. lack of satisfactory standard of care against which a teacher's conduct may be measured;

2. the inherent uncertainty in determining the cause and nature of any damages;

3. the extreme burden which would be imposed on the already strained resources of the public school system;

4. the treat of a flood of litigation; and

5. an award of money damages represents a singularly inappropriate remedy for asserted errors in the educational process; and

6. recognition of such a cause of action would constiture blatant interference with the responsibility for the administration of the public school system.

In both of the aforementioned Maryland decisions, the court made reference to the decision of the Court of Appeal of California in the case of Peter W. v. San Francisco Unified School District, et al, 60 Cal. App. 3d 867, 131 Cal. 854 (1976). In that case a high school graduate instituted an action for damages against the City School District for alleged negligence and intentional misrepresentation on the part of the school district which allegedly resulted in a deprivation to him of basic academic skills. The

courts of the State of California have come to be recognized as being among the most progressive and liberal in this nation. Nonetheless, in Peter W., supra, in refusing recognition for an educational malpractice cause of action, the court stated: ". . . judicial recognition of such duty in the defendant, with the consequence of his liability in negligence for its breach, is initially to be dictated or precluded by considerations of public policy." At a later point in its opinion, the California Court held:

"Upon consideration of the role imposed upon the public schools by law and the limitations imposed upon them by their publicly-supported budgets (. . . and of the just-cited 'consequences to the community of imposing upon them a duty to exercise care with resulting liability for breach') we find no such 'duty' in the first count of the plaintiff's complaint. . . . it states no case of action."

At a later point in the same opinion the court held that:

"If it be assumed that each of these counts effectively pleads the district's failure to have exercised 'reasonable diligence to discharge the duty' respectively alleged, as mentioned in the statute, none states a cause of action."

In yet another jurisdiction, namely, the State of New York, the Court of Appeals in the case of Donohue v. Copiague Union Free School District, 47 NY 2d 440, 391 N.E. 2d 1352 (1979), denied recognition to a cause of action sounding in educational malpractice and stated:

". . . it may very well be that even within the structure of a traditional negligence or malpractice action, a complaint sounding in 'educational malpractice' may be formally pleaded. Thus, the imagination need not be overly taxed to envision allega-

tions of a legal duty of care flowing from educators, if viewed as professionals, to their students.

"The fact that a complaint alleging 'educational malpractice' might on the pleadings state a cause of action within traditional notions of tort law does not, however, require that it be sustained. The heart of the matter is whether, assuming that such a cause of action may be stated, the court should, as a matter of public policy, entertain such claims. We believe they should not.

". . . To entertain a cause of action for 'educational malpractice' would require the courts not merely to make judgments as to the validity of broad educational policies — a course we have unilaterally eschewed in the past — but, more importantly, to sit in review of the day-to-day implementation of these policies. Recognition in the courts of this cause of action would constitute blatant interference with the responsibility for the administration of the public school system lodged by constitution and statute in school administrative agencies."

A few months later in the case of Hoffman v. Board of Education of the City of New York, 49 N.Y. 2d 121, 400 N.E. 2d 317 (1979), the same Court of Appeals of New York stated:

"At the outset, it should be stated that although the plaintiff's complaint does not expressly so state, his cause of action sounds in 'educational malpractice'. . . . as we have recently stated in Donohue v. Copiague Union Free School District (citation omitted), such a cause of action, although quite possibly cognizable under traditional notions of tort law, should not, as a matter of public policy, be entertained by the courts of this State.

". . . in order to affirm a finding of liability in these circumstances, this court would be required to allow the finder of fact to substitute its judgment for

the professional judgment of the Board of Education as to the type of psychometric devices to be used and the frequency with which such tests are to be given. Such a decision would also allow a court or a jury to second guess the determinations of each of the plaintiff's teachers. To do so would open the door to an examination of the propriety of each of the procedures used in the education of every student in our school system. Clearly, each and every time a student fails to progress academically, it can be argued that he or she would have done better and received a greater benefit if another educational approach or diagnostic tool had been utilized. ... However, the court system is not the proper forum to test the validity of the educational decision to place a particular student in one of the many educational programs offered by the schools of this State."

Finding itself confronted by a plaintiff's request for recognition of a new cause of action for educational malpractice, the Supreme Court of Alaska in the companion cases of D.S.W., et al. v. Fairbanks North Star Borough School District and L.A.H., et al., v. Fairbanks North Star Borough School District, 628 P.2d 554 (1981) looked for precedent in other jurisdictions and, in fact, adopted the view of the California Court in Peter W., supra, and of the New York Court in Donohue, supra, as well as the Hoffman case, supra, and stated:

"We agree with the results reached in these cases and with the reasoning employed by the California Court of Appeals in Peter W. and Smith. In particular we think that the remedy of money damages is inappropriate as a remedy for one who has been a victim of errors made during his or her education. The level of success which might have been achieved had the mistakes not been made will, we

believe, be necessarily incapable of assessment, rendering legal cause an imponderable which is beyond the ability of courts to deal with in a reasoned way."

Looking to plaintiffs' complaint in this matter, we find it replete with allegations of negligence of omission and commission by the Defendants. In their Complaint and their counsel's brief, we find assertions that both the Constitution of Pennsylvania and Pennsylvania's Public School Code impose duties upon, defendants regarding the provision of education to individuals such as Jerry Alley, the non-fulfillment of which exposes them to the liability here sought to be imposed. Our review of both the Constitution and the Public School Code leads to the conclusion that although both statutes provide an entitlement to all children in the Commonwealth for a proper education, neither of the statutes specifies or prescribes a legal cause of action for any student and/or his or her parents claiming a deprivation of such education. Most certainly, we have not found that either the Constitution or the Public School Code make any provision for the maintenance of a claim for money damages by parties such as the instant plaintiffs.

Parenthetically, we note that in their complaint, plaintiffs have on one occasion accused defendants of willful, wanton, malicious and intentional misconduct. Despite the presence of such an allegation in the complaint, we do not believe that a fair reading of it could possibly lead to the conclusion that plaintiffs have sufficiently pleaded an intentional tort. Further, our reading of plaintiffs' counsel's brief reinforces this conclusion in that he has therein addressed the entire controversy as one of negligence and at no point has he even suggested the existence of an intentional wrongdoing. In his brief as

well as his argument, plaintiffs' counsel has made it clear that a cause of action such as that which he now advances on behalf of plaintiffs has never been recognized in this Commonwealth. Placing heavy emphasis in his brief upon the actions of the Appellate Courts of Pennsylvania in abolishing certain doctrines of immunity, counsel for plaintiffs urges that his court innovatively recognize an educational malpractice cause of action and thereby permit plaintiffs to proceed to trial in the instant matter. He poses the challenge: ". . . will this Court be in the vanguard in this area of the law . . .?"

According to the organizational structure of the court system of this Commonwealth, the primary duty of this court is to interpret and apply the *existing law* to the cases coming before us. In its present state the law of this Commonwealth does not recognize a cause of action such as that advanced by plaintiffs. Furthermore, we have found no other jurisdiction in this nation which gives recognition to such a cause of action and, certainly, counsel for plaintiffs has furnished us with no information to the contrary. Thus, not only do we find no authority within the laws of this State for permitting plaintiffs to go forward with this action; but we also find that all jurisdictions which have previously dealt with this question have denied the existence of an educational malpractice cause of action. To ignore the unanimous results from the other jurisdictions which have wrestled with this difficult question would, in our judgment, be to "fly in the face of" common sense and sound legal analysis.

As noted in the opinions of several of the cases hereinbefore cited, it well may be that in terms of pure pleading plaintiffs have sufficiently met the burden for negligence pleading. Likewise, it well may be that Jerry Alley has suffered injury in his ex-

posure to the educational process. Nonetheless, it is a basic principle that the law does not provide a remedy for every injury. Howard v. Lecher, 42 N.Y. 2d 109, .366 N.E. 2d 64. While we are not unsympathetic to the plight of Jerry Alley and his parents, we cannot ignore the facts that:

1. neither the statutes nor the case law of Pennsylvania recognize the existence of an educational malpractice cause of action;

2. no other jurisdiction in this nation is known to have recognized an educational malpractice action; and

3. public policy dictates against the recognition of such an action.

In light of the foregoing discussion, this court is compelled to grant defendants' motions for summary judgment and to that end we make the following.

## ORDER

Now, this August 19, 1983, it is hereby ordered, directed and decreed that defendants' motions for summary judgment are granted and plaintiffs' complaint is dismissed as to all defendants.

It is further ordered, directed and decreed that defendants' claim against plaintiffs upon which they were joined as additional defendants is likewise dismissed.