527 A.2d 193

Mary Beth Agostine, Appellant *v.* School District of Philadelphia, Appellee.

Argued February 25, 1987, before President Judge CRUMLISH, JR., Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Lawrence D. Finney,* with him, *Lisa A. Watkins, Krimsky, Levy, Angstreich & Finney, P.C.,* for appellant.

*Andrew M. Rosen,* with him, *Robert T. Lear* and *Patricia A. Donovan,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., June 9, 1987:

Mary Beth Agostine appeals a Philadelphia County Common Pleas Court order granting the School District

of Philadelphia's motion for judgment on the pleadings and dismissing her complaint with prejudice. We affirm.

In 1967 Agostine entered the Philadelphia public school system (District) and was tested and diagnosed as educable mentally retarded (EMR).[1] Accordingly, she was placed in a special class for EMR children. Pursuant to the Department of Education's (Department) regulations,[2] Agostine was reevaluated every other year and remained in the EMR class until her departure in 1980.

---

[1] 22 Pa. Code §341.1(v) defines EMR:

*Mentally retarded*—Impaired mental development which adversely affects the educational performance of a person. A mentally retarded person exhibits significantly impaired adaptive behavior in learning, maturation, or social adjustment as a result of subaverage intellectual functioning. The degree of retardation and the level of social and academic functioning, not deviant behavior patterns, shall be the factors in determining the individualized program. A person shall be assigned to a program for the mentally retarded when the evaluation and Individualized Education Program indicate that such a program is appropriate; provided that no person shall be assigned to a program for the:

(A) educable mentally retarded unless the IQ score of that person is lower than 80. . . .

[2] 22 Pa. Code §341.17(b) provides:

*Reevaluation.* At least once every two years, the review or revision, or both, of the Individualized Education Program shall be based on an analysis of the documented cumulative record of the student by a term in accordance with §341.13(g) of this title (relating to evaluation). The reevaluation may include administration of individual psychological tests administered by a certified public school psychologist and other clinical examinations if needed. Parental consent is not required for a reevaluation. A reevaluation may be conducted more frequently than once every 2 years, if such is deemed appropriate by the local educational agency.

The following year Agostine sought damages in trespass and alleged that the District negligently diagnosed her as EMR when in fact she was learning disabled (LD).[3] The District asserted that the complaint failed to state a claim upon which relief could be granted.

The common pleas court granted the District's motion for judgment on the pleadings, characterizing Agostine's complaint as an educational malpractice action. It treated the complaint as seeking relief under the Public School Code of 1949, Act of March 10, 1949, P. L. 30, *as amended,* 24 P.S. §§1-101—16-1613, and held that "neither the statutes nor the case law of Pennsylvania recognize the existence of an educational malpractice cause of action" and that "public policy dictates against the recognition of such an action."[4]

---

[3] 22 Pa. Code §341.1(iii) defines LD:

*Learning disability.*—A deficiency in the acquisition of basic learning·skills including but not limited to the ability to reason, think, read, write, spell, or do mathematical calculations, as identified by an educational and psychological evaluation. Persons who have learning disorders ·which are primarily the result of visual, hearing, or other handicaps, mental retardation, emotional factors, or environmental disadvantage are not learning disabled. The term learning disability does not exclude the possibility that a learning disabled person may also exhibit such conditions as brain damage or minimal brain disfunction. A person shall be assigned to a program for the learning disabled when the evaluation and Individualized Education Program indicate that such a program is appropriate; provided that the evaluation clearly indicates that the person can demonstrate average or above average intellectual functioning on an appropriate intelligence measure. The evaluation shall include an assessment of specific academic strengths and weaknesses.

[4] *Agostine v. School District of Philadelphia* (No. 193 March Term 1981, filed March 31, 1986), slip op. at 5, citing *Alley v. Bellwood Antis School District,* 27 Pa. D. & C. 3d 307, 316 (1983).

Agostine contends, however, that her suit is a negligence claim brought under common law principles derived from the Commonwealth's Constitution. Agostine alleges that (1) the school psychologists, counselors and teachers had a duty to perform their services with reasonable care; (2) the school psychologists, counselors and teachers failed to use that necessary degree of care when they misdiagnosed her, removed her from the mainstream and placed her in an incorrect educational level; (3) not only was she denied her right to receive an education commensurate with her abilities but she also "lost part of her psyche" as a result of the District's careless, inadvertent negligence; and (4) but for this negligent testing by the District's psychologists and negligent placement and maintenance by the District's teachers and counselors, Agostine would not have been in the EMR class and would not have sustained the aforesaid injuries.

Our scope of review of a common pleas court order granting a motion for judgment on the pleadings is limited to determining whether there has been an error of law or abuse of discretion. *Vogel v. Berkley,* 354 Pa. Superior Ct. 291, 511 A.2d 878 (1986). Such a motion may be granted only where no facts are at issue and the law is so clear that a trial would be a fruitless exercise. *Singer v. School District of Philadelphia,* 99 Pa. Commonwealth Ct. 553, 513 A.2d 1108 (1986).

Although a review of the complaint reveals that Agostine is asserting a common law right of recovery, which is actionable because it accrued during the hiatus in governmental immunity in this Commonwealth,[5] we hold that the only cause of action available to her is under the Public School Code.

---

[5] Our Supreme Court in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973), opened a "window of opportunity" by holding that governmental immunity would no

The mandate of Article III, Section 14 of our state Constitution[6] does not confer an individual right upon each student to a particular level or quality of education but, instead, imposes a duty upon the *legislature* to provide for the maintenance of a thorough and efficient system of public school throughout the Commonwealth. *Danson v. Casey,* 484 Pa. 415, 399 A.2d 360 (1979).

Pursuant to this constitutional mandate, the legislature, through the Public School Code, has delegated to the Department of Education the duty to adopt and prescribe standards and regulations for the proper education and training of all exceptional children.[7] Proper education and training does not have a fixed meaning but varies with the needs of the child and is based upon the ongoing evaluations by psychologists and educators during the pupil's tenure in the system. *Frederick L. v. Thomas,* 419 F. Supp. 960 (E.D. Pa. 1976). The right which has been constitutionally created and statutorily established is a right of entitlement to a public education, a right to participate in the entire process. *Lisa H. v. State Board of Education,* 67 Pa. Commonwealth Ct. 350, 447 A.2d 669 (1982).

---

longer shield political subdivisions from liability for their tortious conduct. *Ayala,* which involved a breach of the district to supervise and protect a student from serious bodily injury, essentially lifted the governmental protection adopted in *Ford v. Kendall Borough School District,* 121 Pa. 543, 15 A. 812 (1888), and later adopted legislatively in Section 201 of the Political Subdivision Tort Claims Act, Act of November 26, 1978, P.L. 1399, *as amended, formerly* 53 P.S. §5311.201, repealed by the Act of October 5, 1980, P.L. 693. A similar provision is now found in 42 Pa. C. S. §8541.

[6] PA. CONST. art. III, §14 states: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth."

[7] Section 1372 of the Code, 24 P.S. §13-1372.

Thus, the right of an exceptional child to public education in Pennsylvania is, like that of all children, statutory, and recovery for any injury occurring from education is limited by statutory provisions. *See O'Leary v. Wisecup,* 26 Pa. Commonwealth Ct. 538, 364 A.2d 770 (1976). A school district is *not* required to devise an educational program which makes the best use of each student's abilities but only to identify exceptional children and develop educational programs appropriate to their particular needs. *Shanberg v. Secretary of Education,* 57 Pa. Commonwealth Ct. 384, 426 A.2d 232 (1981).

We conclude therefore that *Lindsay v. Thomas,* 77 Pa. Commonwealth Ct. 171, 465 A.2d 122 (1983), is controlling. In *Lindsay,* the plaintiff was a learning disabled pupil whom the District failed to diagnose and educate as such, and who was instead placed in regular classes. We held that although the District had a statutory duty to identify exceptional children and to provide them with a proper education, there was no statutory provision whatever for a monetary remedy arising out of a breach of these statutory duties.[8]

Had Mary Beth Agostine brought an action against the District to properly place her when she was in school, she would arguably have been entitled to that relief. Regrettably, we must affirm the common pleas court because it is clear that Agostine cannot establish that she is entitled under the Public School Code to the relief she now seeks.

The order of the common pleas court is affirmed.

---

[8] In *Aubrey v. School District of Philadelphia,* 63 Pa. Commonwealth Ct. 330, 437 A.2d 1306 (1981), we held that recognition in the courts of an educational malpractice cause of action would constitute blatant interference with a responsibility for the administration of the public school system lodged by constitution and statute in school administrative agencies.

ORDER

The Philadelphia County Common Pleas Court order, No. 193 March Term 1981 dated March 31, 1986, is affirmed.

Judge COLINS dissents.

---

DISSENTING OPINION BY JUDGE BARRY:

I respectfully disagree with the majority's conclusion that the instant case is controlled by *Lindsay v. Thomas,* 77 Pa. Commonwealth Ct. 171, 465 A.2d 122 (1983). Although the factual situation in this case is very similar to that presented in *Lindsay,* the two cases are based on entirely different legal theories. *Lindsay's* claim was based on the school's alleged violation of the special education provisions found in Sections 1371 and 1372 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§13-1371—13-1372. The present action, on the other hand, is based strictly on a theory of common law negligence. Our refusal, in *Lindsay,* to recognize a private cause of action arising from a breach of the special education provisions of the School Code, has no bearing on the validity of the case at hand.

*Aubrey v. School District of Philadelphia,* 63 Pa. Commonwealth Ct. 330, 437 A.2d 1306 (1981), is also distinguishable and, therefore, not controlling. In that case, the parents of a high school senior who failed a sex education class and was required to complete a summer course before receiving her diploma, filed a lawsuit against the school district essentially alleging that the school's educational program was a gross violation of public policy. This Court classified the suit as an educational malpractice claim and dismissed it on grounds that the courtroom is not the proper forum for parents to challenge the school's educational policies and its implementation of those policies.

Unlike *Aubrey,* the case at hand does not question the school's educational policies. It is based solely on common law principles of negligence which allegedly were violated by psychologists, counselors and teachers when they failed to properly diagnose and properly place Agostine. The facts giving rise to this cause of action are in the nature of medical rather than educational malpractice. The pleadings focus on the specific negligent acts of certain school employees rather than challenging educational policies of the school district.

For these reasons, I believe the decision of the common pleas court must be reversed and this cause of action must be reinstated pursuant to *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973).