**Janell D. BROWN, Angelita Hogan, and William E. Cunnane, III, Appellants,**

v.

**COMMUNITY COLLEGE OF PHILA-DELPHIA, Dr. Ronald J. Temple, and Dr. Thomas R. Hawk.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1994.

Decided Dec. 29, 1994.

Reargument Denied Feb. 7, 1995.

Joseph A. Sullivan, for appellants.

---

Ian D. Meklinsky, for appellees.

Before McGINLEY and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Janell D. Brown, Angelita Hogan, and William E. Cunnane, III, (collectively, the Editors) are former editors of the *Student Vanguard,* the Community College of Philadelphia's (CCP) campus newspaper. CCP administrators denied the Editors' request to examine campus security records. The Editors appealed that denial to the Common Pleas Court of Philadelphia County (trial court), asserting that CCP was required to release such information pursuant to the Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4, commonly referred to as the Right–to–Know Act. The trial court held that because community colleges are not a Commonwealth agency, the Right–to–Know Act does not apply and thereby quashed the statutory appeal.

█ We are now asked to determine if community colleges are governed by the mandates of the Right–to–Know Act.[1]

█ Section 2 of the Right–to–Know Act, 65 P.S. § 66.2, provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." An agency is defined as:

Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turn-

pike Commission, or any State or municipal authority *or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.*

Section 1 of the Right–to–Know Act, 65 P.S. § 66.1 (emphasis added). Therefore, for a community college to be subjected to the mandates of the Right–to–Know Act, a community college must be a "similar organization" statutorily created to perform an essential governmental function.

To determine whether a community college meets this standard, we must review the statute pursuant to which the college was created. *See* Section 1 of the Right–to–Know Act, 65 P.S. § 66.1. In 1963, the General Assembly enacted the Community College Act (CC Act),[2] providing for the creation of accessible, affordable, local community colleges. *See Derry Township School Dist. v. State Bd. of Educ.,* 65 Pa.Commonwealth Ct. 188, 442 A.2d 32 (1982). The CC Act defines a community college as "a *public* college or technical institute which is established and operated in accordance with the provisions of this act by a local sponsor which provides a two year, postsecondary, college-parallel, terminal-general, terminal-technical, out-of-school youth or adult education program or any combination of these." 24 P.S. § 19–1901–A(4) (emphasis added). Moreover, a local sponsor includes a "school district or a municipality or a county board of school directors or any combination of school districts,

---

1. Our scope of review is limited to determining whether the trial court committed an error of law or abuse of discretion. *Mirror Printing Co. v. Altoona Area School Bd.,* 148 Pa.Commonwealth Ct. 168, 609 A.2d 917 (1992).

CCP filed an Objection to Jurisdiction and requested that the case be transferred to the Superior Court. However, because a community college is a municipal authority that must abide by the Right–to–Know Act, jurisdiction properly lies with this court. *See Community College of Allegheny County v. Seibert,* 144 Pa.Commonwealth Ct. 616, 601 A.2d 1348 (1992), *aff'd without opinion,* 533 Pa. 314, 622 A.2d 285 (1993), and *Mooney v. Temple University Board of Trustees,* 4 Pa.Commonwealth Ct. 392, 285 A.2d 909, *aff'd,* 448 Pa. 424, 292 A.2d 395 (1972).

We note that legislatures enact freedom of information laws, such as our Right–to–Know Act, wholly in the public interest and, therefore, those laws must be liberally interpreted to achieve their purposes. *See North Central Ass'n of Colleges & Schools v. Troutt Bros., Inc.,* 261 Ark. 378, 548 S.W.2d 825 (1977); *see also Board of Trustees v. Freedom of Information Comn'n,* 181 Conn. 544, 436 A.2d 266 (1980) (holding that if the words of such a statute fail to clearly indicate whether the provisions apply in certain circumstances, then the judiciary must liberally construe that statute).

2. Act of August 24, 1963, P.L. 1132, *formerly,* 24 P.S. §§ 5201–5214, repealed and re-enacted by the Act of July 1, 1985, P.L. 103, currently found at 24 P.S. §§ 19–1901–A–19–1923–A.

municipalities or county boards of school directors which participate or propose to participate in the establishment and operation of a community college." 24 P.S. § 19–1901–A(2).

In *Kegel v. Community College of Beaver County*, 55 Pa.D. & C.2d 220 (1972), the Common Pleas Court of Beaver County decided the exact issue we have before us, holding that a community college created pursuant to the CC Act is an agency subject to the requirements of the Right-to-Know Act because the CC Act, read in its entirety, constitutes a declaration by the legislature that the colleges organized thereunder are to perform an essential governmental function.[3] *Id.*

Because we are persuaded that the court of common pleas in *Kegel* was correct in its analysis then, and because we do not believe a different analysis is required now, we adopt the holding in *Kegel:* Community colleges are still established and operated by a local sponsor. 24 P.S. § 19–1903–A. The local sponsors are political subdivisions of the Commonwealth. 24 P.S. § 19–1901–A(2). The trustees of the colleges are appointed by the elected officials of the member political subdivisions. 24 P.S. §§ 19–1903–A(c) and 19–1904–A. No college may be established unless the State Board of Education approves the proposed plan. 24 P.S. § 19–1902–A. Colleges established pursuant to the CC Act are subject to the policies, rules and regulations formulated by the Council of

Higher Education and adopted by the State Board of Education. 24 P.S. § 19–1902–A. The colleges are financed, in large part, by appropriations from the members of the local sponsor and from the legislature. 24 P.S. § 19–1903–A; *see Derry.* All college employees are eligible for inclusion in the Public School Employees' Retirement System of Pennsylvania or the Pennsylvania State Employees' Retirement System. 24 P.S. § 19–1913–A(f). A community college is eligible to participate in the State Public School Building Authority Act and the Municipality Authorities Act of 1945. 24 P.S. § 19–1913–A(g). Finally, a community college cannot be established unless the State Board of Education determines that the local sponsor is not already "adequately served by established institutions of higher learning." 24 P.S. § 19–1902–A(d).

Additionally, in *Bucks County Community College v. Bucks County Bd. of Assessment Appeals*, 147 Pa.Commonwealth Ct. 505, 608 A.2d 622 (1992) (en banc), we addressed whether a community college was a local agency for purposes of tax exemption. To determine that issue, we analyzed the language of the community college's enabling legislation, recognizing that the CC Act defines community colleges as *public* colleges and that a community college's local sponsors are political subdivisions. We also noted that under the CC Act, community colleges are expressly granted the right to participate in various statutory schemes normally reserved

---

**3.** The common pleas court specifically held:

> Community colleges are established and operated by a local sponsor. The members of the local sponsor are political subdivisions of the Commonwealth. The trustees of the colleges are appointed by the elected officials of the member political subdivisions. No college may be established unless the State Board of Education approves the proposed plan. Colleges established pursuant to the act are subject to the policies, rules and regulations formulated by the Council of Higher Education and adopted by the State Board of Education. A community college is defined as a *"public college or technical institute"* which provides a variety of two-year educational programs for both young people and adults. The colleges are financed, in large part, by appropriations from the members of the local sponsor and from the legislature. All college employees are eligible for inclusion in the Public School Em-

> ployes Retirement system, and the college is eligible to participate in the State Public School Building Authority Act. Finally, and we believe of extreme importance in disposing of the issue before us, no college is to be established unless the State Board of Education determines, among other things, that the area included within the local sponsor is *not* already "adequately served by established institutions of higher learning". . . .
>
> . . . .
>
> By enacting the Community College Act, the legislature disclosed an awareness of, and an effort to fulfill, the need for continued education in those areas not adequately served. They did this by authorizing the establishment of what is, in essence, a public institution supported primarily by public tax moneys.

*Kegel v. Community College of Beaver County*, 55 Pa.D. & C.2d 220, 222–23, 225 (1972) (emphasis in original).

for local governmental agencies. *Id.* We held:

> Our review of the CC Act, both here and in [*Community College of Allegheny County v. Seibert,* 144 Pa.Commonwealth Ct. 616, 601 A.2d 1348 (1992), *aff'd without opinion,* 533 Pa. 314, 622 A.2d 285 (1993)], leads us to conclude that a community college is not an instrumentality of the Commonwealth, but rather is "the creature and representative of the sponsor which created it." As such, it is more properly classified as a local agency....

*Id.* at 511, 608 A.2d at 625 (citation omitted).

In *Seibert,* we conducted a similar review and analysis, holding that community colleges are political subdivisions for the purpose of governmental immunity. The court emphasized that "community colleges under the CC Act are expressly granted the right to participate in various other statutory schemes which are normally reserved for political subdivisions." *Id.* at 623, 601 A.2d at 1351. We then quoted with approval *Szmodis v. Northampton County Area Community College,* 49 Pa.D. & C.3d 286, 290 (1988), which stated:

> Simple logic would appear to require a finding that a community college, as a tax supported institution created by local government units under a grant of authority by the state legislature, is a local governmental agency.

*Id.* at 624, 601 A.2d at 1352; *see also Russo v. Nassau County Community College,* 81 N.Y.2d 690, 603 N.Y.S.2d 294, 623 N.E.2d 15 (1993) (holding that a public community college is an agency under New York's Freedom of Information Law based on the most natural meaning of the statutory language).

CCP concedes that the vitality and availability of community colleges is certainly good public policy; however, CCP asserts that according to *Agostine v. School Dist. of Philadelphia,* 106 Pa.Commonwealth Ct. 492, 527 A.2d 193, *appeal denied,* 517 Pa. 610, 536 A.2d 1334 (1987), because the Pennsylvania Constitution does not require the legislature to provide for public education beyond the primary and secondary level, such colleges are not indispensably necessary to the functioning of government or the continued existence of the Commonwealth. We believe that CCP has misinterpreted *Agostine* and there is nothing in *Agostine* to suggest that community colleges, merely because not *required* under the Constitution, do not serve an essential government function.

In *Agostine,* we held that although

> [t]he mandate of Article III, Section 14 of our state Constitution does not confer an individual right upon each student to a particular level or quality of education ... [it] imposes a duty upon the *legislature* to provide for the maintenance of a thorough and efficient system of public school throughout the Commonwealth.

*Id.* at 497, 527 A.2d at 195 (emphasis in original). Moreover, the Pennsylvania Constitution provides that "[t]he General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the *needs* of the Commonwealth," Pa. Const. art. III, § 14 (emphasis added), without limiting public education to traditional primary and secondary schools.

In fulfilling its constitutional duty to properly educate the citizens of the Commonwealth, the General Assembly has discretion to create an appropriate school "system." *See Lisa H. v. State Bd. of Education,* 67 Pa.Commonwealth Ct. 350, 447 A.2d 669 (1982), *aff'd,* 502 Pa. 613, 467 A.2d 1127 (1983). The term "system" means a broad-based public educational scheme meeting the needs of *all* Commonwealth citizens and, thus, includes not only public elementary and secondary schools, but also the fourteen state-owned universities [4] and local community colleges.

By enacting the CC Act, the General Assembly disclosed an awareness of, and an effort to fulfill, the need for continued education in those areas not adequately served. Through the establishment of what is, in essence, a public institution supported pri-

---

4. The state-owned universities are organized and governed by the State System of Higher Education Act, 24 P.S. §§ 20–2001–A–20–2018–A.

marily by public taxes to meet those needs, the General Assembly has clearly and substantially declared that community colleges perform an essential function imposed on the legislature by the people through the state's constitution. *Kegel* at 225–26.

Therefore, we hold that the Right-to–Know Act applies to community colleges and that the trial court erred by determining otherwise.[5] *See* Andrea G. Nadel, Annotation, *What Constitutes an Agency Subject to Application of State Freedom of Information Act,* 27 A.L.R.4th 742 (1993). Accordingly, we reverse the trial court's order and remand this case to the trial court for determination consistent with this opinion and the Right-to–Know Act.

## ORDER

AND NOW, this 29th day of December, 1994, the order of the Court of Common Pleas of Philadelphia County, dated March 24, 1994, at 1366 April Term 1993, is hereby reversed. This case is remanded to the trial court for determination consistent with Pennsylvania's Right-to–Know Act.

Jurisdiction relinquished.

DELLA PORTA, Senior Judge, dissenting.

I respectfully dissent. First of all, there is a serious question of whether we have appellate jurisdiction in this matter. Our Rules of Appellate Procedure require a precise citation of the statutory provision, general rule or other authority which confers such jurisdiction. Pa.R.A.P. 2114. The majority dismisses the question with the *Steinesque* (*Gertrude*) argument that because "a community college is a municipal authority that must abide by the Right-to–Know Act, jurisdiction properly lies in this Court." This is the very issue which must be resolved on the merits. The problem is that there is no

there, there. Where is the precise citation of authority? The only citation provided by Appellant is 42 Pa.C.S. § 762(a)(7) dealing with governmental immunity waiver, which is clearly not involved in this case.

Secondly, on the merits, the majority correctly quotes the Right-to–Know Act, 65 P.S. § 66.2, as requiring an "agency" to open for examination and inspection its public records. The majority then quotes the definition of "agency." Nowhere does the definition specifically include "community college." The majority, however, sees inclusion in the general term of "similar organization ... which ... performs or has for its purpose the performance of an essential governmental function."

On what authority can we say that post high school education is an essential governmental function? In fact, the Community College Act defines community college as a college established and operated by "a local sponsor." 24 P.S. § 19–1901–A(4). Clearly, a local sponsor is not a government agency, although, like any other private or public entity, it can be subject to all kinds of governmental regulations. The only authority found by the majority are an out-of-state decision and two trial court's opinions, one of which bases its conclusion that a community college is a local government agency on "simple logic." *Szmodis v. Northampton County Area Community College,* 49 Pa.D. & C.3d 286, 290 (1988).

On the other hand, we have two opinions by this Court on this exact issue of a state college being an agency for the application of the Right-to–Know Act: one involves Temple University (*Mooney v. Temple University Board of Trustees,* 4 Pa.Commonwealth Ct. 392, 285 A.2d 909, *aff'd,* 448 Pa. 424, 292 A.2d 395 (1972)), and the other concerns Pennsylvania State University (*Roy v. Pennsylvania State University,* 130 Pa.Commonwealth Ct. 468, 568 A.2d 751 (1990)). In both

---

**5.** On January 26, 1993, a bill was introduced in the Pennsylvania House of Representatives, H.B. 104, 176th Pa.Gen.Assembly (1993), that would specifically add community colleges to the definition of agency under the Right-to–Know Act. Presently, the bill is before the House Committee on Education, where it has been sitting since February 10, 1993. The bill adds the following

text to Section 1 of the Right-to–Know Act, 65 P.S. § 66.1:

> The term shall include: Lincoln University; The Pennsylvania State University; The University of Pittsburgh; Temple University; The State System of Higher Education and all of its member institutions; and all community colleges.

cases, our Court has held that a state college is not an agency for the purpose of the Right–to–Know Act. All literature treats community colleges and state colleges as being legally similar entities.

The fact is that the Legislature itself, which created community colleges, does not believe that they are a governmental agency for the purpose of the Right–to–Know Act. If they believed otherwise they would not have introduced legislation on January 26, 1993 in H.B. 104, which would add state and community colleges to the definition of "agency" under the Right–to–Know Act.

We must conclude that unless such legislation were to become law (which is not likely at this point), community colleges are not agencies subject to the Right–to–Know Act. I would, therefore, affirm the decision of the Trial Court.