**PEERLESS PUBLICATIONS, INC., Appellant,**

v.

**COUNTY OF MONTGOMERY, Mario Mele, Chairman, Jon D. Fox, Commissioner and Joseph M. Hoeffel, III, Commissioner.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1995.

Decided March 10, 1995.

Reargument Denied May 8, 1995.

---

Fred T. Magaziner, for appellant.

Andrew L. Braunfeld, for appellees.

Before COLINS, President Judge, PELLEGRINI, J., and LORD, Senior Judge.

LORD, Senior Judge.

Peerless Publications, Inc. (Peerless) appeals a Montgomery County Court of Common Pleas order sustaining the preliminary objections of Montgomery County and its Commissioners and dismissing Peerless' complaint.

Peerless alleged the following facts in its complaint. Peerless owns a tract of land, referred to as "the Mercury Property," at High and York Streets in the Borough of Pottstown, Montgomery County, Pennsylvania. Between the months of April and September 1992, a series of meetings were held between representatives of Montgomery County, the Borough of Pottstown, the Montgomery County Community College (County College) and Peerless, wherein the potential acquisition of the land for the purpose of constructing a branch campus of the County College and a town square was discussed.

On October 2, 1992, the Commissioners sent the following letter to the president of Peerless:

Dear Mr. Hopwood:

As you are aware, Montgomery County plans to construct a branch campus of the Montgomery County Community College in downtown Pottstown. In that regard, we have been discussing with you the potential acquisition of the tract now owned by the Mercury at High and York Streets. We, the Commissioners, have come to Pottstown twice in recent weeks to discuss this with you, in addition to your earlier meetings with other county representatives.

The purpose of this letter is to formally put in writing what we have verbally been discussing. While you verbally indicated to us at our September 30 meeting that for business reasons you did not feel you were in a position to make the site available to us, we ask you to reconsider this position in light of the following specific offer.

Montgomery County wishes to immediately acquire fee title to your 74,030 square foot property at High and York Streets in Pottstown, identified as Block 15 Unit 44. If you are amenable to the county's acquisition of this property, the county is prepared to pay financial compensation which reasonably and fairly covers the costs you have expended in purchasing and preparing the site for your use. Based on what we know this would include the following:

1. The current value of the land as a vacant lot as reflected in the appraisal which we recently had performed.

2. The value of the foundations and other improvements which you have had constructed on the site.

3. The cost of the structural steel which you have ordered for the construction of your proposed building, assuming that steel then becomes the property of Montgomery County.

4. Your cost for contract penalties or similar charges that you incur by not proceeding with your proposed construction on this site.

5. Other charges that are identified and can be justified as reasonable costs to you, that are a direct result of you not building on this site and are for items which you cannot use on a different site.

We offer you compensation for the above costs up to a total maximum of $1,000,000 on the condition that all of the costs are reasonable and are documented and justified in writing to our satisfaction. We are prepared to complete this property transaction and to hold settlement either this year or in early 1993.

We request that you seriously consider this formal offer for the acquisition of your property. Please respond in writing as soon as possible, but no later than ten days from the date of this letter.

We await your response.

On October 9, 1992, Peerless sent a letter to the Commissioners accepting "the written offer of the County of Montgomery dated October 2, 1992." The County then issued a press release announcing it had reached an agreement to acquire the property.

Between October 1992 and February 1993, Peerless submitted documentation to the County demonstrating that Peerless had incurred $1,281,877.86 in expenses in purchasing and preparing the property. The County, however, refused to pay Peerless $1,000,000 and stated it was prepared to pay no more than $500,000 for the property.

Peerless then filed its complaint. The County and its Commissioners filed preliminary objections in the nature of a demurrer, a motion to strike off a pleading because of lack of conformity to law or rule of court and a motion for a more specific complaint. The trial court, on two grounds discussed below, entered an order sustaining the demurrer and dismissing the complaint. Peerless now appeals to this Court.

▮▮▮ . Our scope of review of a trial court's grant of preliminary objections is limited to determining whether that court committed an error of law or abused its discretion. *Miller v. Kistler,* 135 Pa.Commonwealth Ct. 647, 582 A.2d 416 (1990), *petition for allowance of appeal denied,* 527 Pa. 656, 593 A.2d 427 (1991). In order for a court to sustain preliminary objections, it must appear with certainty that the law will not permit recovery and, where any doubt exists as to whether the preliminary objections

should be sustained, that doubt should be resolved by a refusal to sustain them. *Pennsylvania State Troopers Association v. Commonwealth of Pennsylvania,* 146 Pa.Commonwealth Ct. 467, 606 A.2d 586 (1992). Preliminary objections admit as true all facts which are well pleaded as well as all inferences which are reasonably deducible therefrom. *Id.* Factual inquiries are improper on preliminary objections. *Jamieson v. Commonwealth of Pennsylvania Board of Probation and Parole,* 83 Pa.Commonwealth Ct. 546, 478 A.2d 152 (1984).

The first of two issues raised by Peerless is whether, contrary to the trial court's conclusion, Peerless adequately alleged the existence of a contract, where its complaint averred (a) that it accepted the County Commissioners "offer"; (b) that the County Commissioners issued a press release stating they had entered into an agreement; and (c) that the terms of the offer and, particularly, its price were clear, definite and enforceable.

The second issue Peerless raises is whether the trial court properly dismissed the complaint pursuant to the Second Class County Code's [1] requirement of court approval for land purchases, where (a) that provision does not apply to this purchase; (b) the County Commissioners' counsel stated the provision was inapplicable; and (c) Peerless was not required to plead compliance with the statute in its complaint.

Peerless argues that its complaint establishes that the Commissioners made a formal and specific offer by letter to purchase land owned by Peerless for a price equal to the amount that Peerless had expended in purchasing and preparing the site, up to a maximum of $1,000,000. Peerless accepted the Commissioners' offer and the Commissioners issued a press release announcing they had "reached an agreement" with Peerless. Peerless then submitted full and complete documentation to the Commissioners which demonstrated Peerless had paid more than $1,000,000 to purchase and prepare the site. Under the circumstances, Peerless contends, its agreement with the Commissioners was

---

clear, definite, and enforceable, and required the Commissioners to pay $1,000,000.

Peerless also argues that the trial court erred when it dismissed Peerless' complaint pursuant to Section 2505(a) of the Second Class County Code, 16 P.S. § 5505(a), which provides:

The county commissioners may purchase, take by gift, devise or by the power of eminent domain, in accordance with the provisions of this act, such real property at the county seat or in such other places, as may be authorized by law, as they deem necessary for the purposes of a county courthouse, county jail, prison, workhouse, detention house or other county building, either in acquisition of a building suitable for such purposes or in the construction of a new building, or in the alteration, including enlargement, of an existing county building. Any purchase herein authorized shall be subject to the approval of the court of common pleas of the county as to purchase price, and no such contract shall bind the county, nor shall any conveyance be valid until the court has so approved the purchase price.

Peerless submits that the Commissioners did not intend to build "a county courthouse, county jail, prison, workhouse, [or] detention house" on Peerless' land—instead, they intended to convey part of the land to the Borough of Pottstown for use as a new town square, and to convey the rest of the land to the County College. Peerless states that this was confirmed by the Commissioners' own attorney, who expressly told Peerless' attorney during negotiations that section 2505(a) did not require court approval of the transaction. In addition, Peerless states that the Commissioners have not sought court approval of the purchase price in other similar transactions. Therefore, Peerless contends, section 2505(a) by its own terms and the Commissioners' own conduct establish that the requirement of court approval of purchase price does not apply to the transaction in this case.

Finally, Peerless argues it would not have been required to plead compliance with section 2505(a) in its complaint even if that section were applicable to this transaction.

Instead, such alleged non-compliance would at most be an affirmative defense that the Commissioners could have included in their answer to the complaint. Moreover, the trial court in this case could have granted any necessary approvals of purchase price.

The County Commissioners respond to the above arguments by contending that the parties' interactions amounted only to an agreement to negotiate the purchase price of the property and nothing more. They emphasize that an actual purchase price was never agreed to by the parties. They distinguish authority for what they term "a more expansive view" of what is meant by a sufficiently definite purchase price by noting that, here, there is an acquisition of property by a public body having the potential to affect the taxpayers of the community dramatically.

The Commissioners also maintain that section 2505(a) evidences the importance of a purchase price term. They assert that, contrary to Peerless' argument, this statute is applicable and expressly requires common pleas court approval of an actual purchase price of a county building before an enforceable contract can exist. The Commissioners note that the language of the statute refers to jails, detention centers "and *other* buildings," not other *similar* buildings. They submit that the trial court properly dismissed Peerless' complaint because Peerless failed to allege that court approval of an actual purchase price was sought and obtained pursuant to section 2505(a). In this case, the Commissioners contend, since the parties never agreed to a sufficiently definite actual purchase price, and court approval was never obtained under section 2505(a), an enforceable contract was never created.

 We do not accept the position that the Commissioners' letter failed to constitute a definite offer, or that the letter was instead a mere agreement to negotiate. We restate here the most relevant portion of that letter:

We offer you compensation for the above costs up to a total maximum of $1,000,000 on the condition that all of the costs are reasonable and are documented and justified in writing to our satisfaction.

An agreement is sufficiently definite if the parties intended to make a contract and there is a reasonably certain basis upon which a court can provide an appropriate remedy. *See, e.g., Greene v. Oliver Realty, Inc.,* 363 Pa.Superior Ct. 534, 526 A.2d 1192, *petition for allowance of appeal denied,* 517 Pa. 607, 536 A.2d 1331 (1987). Price is an essential term of a contract for the transfer of property and must be sufficiently definite and certain or capable of being ascertained from the contract between the parties. *Portnoy v. Brown,* 430 Pa. 401, 243 A.2d 444 (1968). That is certain which can be made certain. *Id.* Even contracts which specify that price is to be measured by the "fair market value" or "reasonable value" of the services or property involved are generally held to contain a sufficiently certain price in order to constitute an enforceable obligation. *Id.* Here, we conclude that the Commissioners offered a sufficiently certain price— $1,000,000, providing reasonable costs are documented and justified. Any purchase price up to that amount "[could] be made certain" by submitting documentation of reasonable costs to the County Commissioners. On the face of the complaint, the price and the reasonableness of costs are capable of being ascertained based on reasonable value, not to exceed $1,000,000. *Id.* The requisite mutuality for a contract exists, for if the County were suing Peerless because Peerless would not convey the property for $1,000,000, the Commissioners could certainly bind Peerless to this contract.

Moreover, we do not agree with the trial court that the "condition that all of the costs are … justified in writing to [the Commissioners'] satisfaction" allows the Commissioners unfettered discretion to determine a purchase price. Nor does the condition render the price undeterminable, thereby showing that the offer was insufficient and a contract was not formed. Instead, payment of up to $1,000,000 is conditioned upon the justification of costs in writing to the Commissioners' satisfaction; whether that condition is met depends on whether the Commissioners are satisfied, and any dissatisfaction on their part must be genuine and not prompted by caprice or bad faith. *See, e.g., Commonwealth v. Berger,* 11 Pa.Commonwealth Ct. 332, 312

A.2d 100 (1973). These are factual questions properly reviewed in the context of whether a contract obligation was met and are neither relevant or appropriate at this stage of the proceedings. *See Berger; Jamieson.*

Further, on the question of whether an offer of the requisite certainty was made such that a contract was formed, and putting aside for the moment the question of whether any contract was rendered unenforceable by section 2505(a), we do not read that section to impose a requirement of greater specificity when a county is a purchasing party. To be sure, there are checks on counties' spending of taxpayer dollars, including but not limited to section 2505(a), but there does not appear to be anything in that provision which alters the normal rules of contract formation.

∎ We do not accept Peerless' suggestion that the bare fact that the Commissioners' letter expressly and obviously purports to be an offer is determinative, but do hold that it is some evidence that what follows may be an offer. On the facts alleged, the letter did indeed constitute an offer, with a sufficiently definite price and a condition that together provide a reasonably certain basis for a court to fashion an appropriate remedy after factual inquiry. Further, on the facts alleged, Peerless accepted that offer and met that condition. Accordingly, we disagree with the trial court's conclusion as to the first issue presented and we hold that preliminary objections were improperly sustained on that basis.

We now address the remaining issue of whether section 2505(a) constitutes a legal bar to recovery. Initially, we note there is no precedent squarely on point to guide us as to what purchases are included within the ambit of that section; we did not hold in *Pittsburgh v. Board of Property Assessment Appeals and Review of Allegheny County,* 49 Pa.Commonwealth Ct. 442, 412 A.2d 655 (1980), as the trial court stated here, that "government buildings" are included in section 2505(a). Viewing the terms of the statute itself, section 2505(a) pertains to purchases "for the purposes of a county courthouse, county jail, prison, workhouse, detention house or other county building." While

it is true that the statute does not state "other *similar* county building[s]," neither does it simply state that "*all* county buildings" are subject to it, or include the terms "colleges" or "town squares." Further, there is an obvious and discrete similarity between the purposes of the five buildings that are specified. On the other hand, the statute plainly states it applies to "other county building[s]" and the trial court was justifiably reluctant to disregard that term.

■ Nevertheless, even assuming, *arguendo*, that section 2505(a) applies to all county buildings, we hold that preliminary objections were improperly sustained on that basis. It cannot be said with certainty that either or both of the alleged intended uses of the land here—for a County College branch and for a town square—can be considered to fall within the term "county building" and thus are covered by the terms of section 2505(a). The trial court wrote that "[t]he stated purpose of the land at issue was to build a branch campus of the Montgomery County Community College. The College is owned and run by the County and any buildings are 'county buildings.' " *Peerless Publications, Inc. v. County of Montgomery* (No. 93–08746, filed June 7, 1994), slip op. at 8. However, this statement does not account for the allegations that the County also intended to convey land to the Borough of Pottstown for a *town square* as well to the County College. For example, Peerless states in its complaint:

> 14. The County intended to purchase the Mercury Property and then to convey part of it to the Borough for use as a new town square and the remainder to the College for the College's use.

A town square is certainly not a "county building." The trial court's statement also assumes, with some logical justification but nonetheless without benefit of record evidence, that the College is "owned and run" by the County[2] and that "branch campus" necessarily means "county building."[3]

Given the facts averred in this case, it is understandable that Peerless did not plead compliance with the statute.[4] In fact, noncompliance with the statute may be appropriate as an affirmative defense against enforcing the contract. Under the circumstances, it is not clear that section 2505(a) applies or will bar recovery and, without more, it is not certain that the contract is unenforceable or that there is no possibility of relief. For these reasons, we disagree with the trial court's resolution of the statutory issue on preliminary objections.

As we have discussed above, this case was dismissed on preliminary objections. It may be that when an answer is filed and discovery is taken, summary judgment will be appropriate based on some of the County's contentions. However, at this preliminary stage of

2. The legal status of community colleges has been the subject of several decisions by this Court. *See Brown v. Philadelphia Community College,* —— Pa.Commonwealth Ct. ——, 654 A.2d 32 (1994) and cases cited therein.

3. Moreover, we held in *Pittsburgh* that, for those properties acquired under the statute, court approval as to purchase price only, not the decision to purchase itself, is required. The limited requirement of this statute is one of several factors that distinguish this case from cases—interpreting other statutes—upon which the Commissioners rely. *See Carnegie Natural Gas Co. v. Allegheny County,* 406 Pa. 134, 176 A.2d 630 (1962) (Act of 1913, P.L. 1374, provides that a contract must be executed in a particular manner and therefore must be complied with before liability can be imposed); *Philadelphia v. Canteen Co.,* 135 Pa.Commonwealth Ct. 575, 581 A.2d 1009 (1990) (Philadelphia Home Rule Charter requires approval of contracts and execution by Procurement Department); *Thayer v. Lawrence County,*

29 Pa.D. & C. 169 (1936) (former provision under The General County Law, Act of May 2, 1929, P.L. 1278, requires court approval of purchase, project and particulars thereunder). Further, since the statute here does not limit the time in which the required approval can be obtained, there is no assurance that any such approval *cannot* be obtained.

4. As noted above, Peerless contends, and the County does not specifically deny, that the County had previously acted without seeking court approval under section 2505(a) and told Peerless that such approval was unnecessary here. Peerless also alludes to an inequity created when one breaches a contract by subsequently claiming the law prevents it from entering into contracts so that it does not make imprudent contracts and waste taxpayers' money. However, these are not proper considerations on the question of whether the purchase in this case is in fact included within the terms of section 2505(a).

the case, it is clear that a dismissal was in error.

Accordingly, the trial court's order is reversed.

### *ORDER*

AND NOW, this 10th day of March, 1995, the order of the Court of Common Pleas of Montgomery County, No. 93–08746, dated April 7, 1994, is hereby reversed.