In re Rule upon G. S. Walker, Zenas Johnson, John Edgar, Harvey Fry, Samuel Garn and Isaac Connor, School Directors of Washington Township, issued on Petition of Timothy Ross et al., inhabitants of said Township. Appeal of Timothy Ross et al.

*School laws—Removal of school directors—Acts of June 6, 1893, and May 8, 1854—Revision of director's discretion by the court.*

By the act of June 6, 1893, P. L. 330, relating to the removal of school directors who have failed to provide proper accommodations for school children, the legislature intended to confer a certain power of supervision

IN RE RULE UPON WALKER et al. ROSS' APPEAL. 25

1897.]                    Syllabus—Opinion of the Court.

of the discretion of school boards on the state courts, which, under the act of May 8, 1854, P. L. 617, the courts did not have.

*School laws—Act of June 6, 1893—Findings of fact by inspector.*

The intent of the act of June 6, 1893, is to confer on the courts of common pleas a power, through the appointment of an inspector, to ascertain the facts and determine whether the directors have exercised a sound discretion in providing suitable accommodations for all the school children of the district; but the findings of fact by such inspector are not conclusive on the court of common pleas.

*School laws—Act of June 6, 1893—Review by Supreme Court.*

*Not decided* whether under the act of June 6, 1893, any power of review of the decree of the court of common pleas is given to the Supreme Court. *It seems* that such power is doubtful, except in a case of manifest abuse of discretion by the common pleas.

Argued Oct. 6, 1896. Appeal, No. 29, Oct. T., 1896, by Timothy Ross et al., from order of C. P. Greene Co., Oct. T., 1895, No. 1, Miscellaneous Docket, on rule to remove school directors. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule upon school directors of the school district of Washington township to show cause why they should not be removed. Before DICKEY, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was order discharging rule to show cause.

*James J. Purman,* with him *Frank W. Downey,* for appellants, cited Washington Twp. School Directors, 15 Pa. C. C. Rep. 509.

*D. S. Walton,* with him *Geo. L. Wyly* and *J. A. J. Buchanan,* for appellees, cited Nicklas's Petition, 146 Pa. 212; Heard v. School Dist., 45 Pa. 93; Schlaudecker v. Marshall, 72 Pa. 200.

OPINION BY MR. JUSTICE DEAN, January 4, 1897:

The act of June 6, 1893, P. L. 330, provides in section 1 that whenever the school directors of any district " shall wilfully neglect or refuse " to provide suitable school buildings and rooms for the accommodation of all the children of the district then ten or more taxable citizens of the district may petition the court of common pleas for the appointment of a competent

26 IN RE RULE UPON WALKER et al. ROSS' APPEAL.

Opinion of the Court. [179 Pa.

inspector, whose duty it shall be to visit the district, and on notice to the school board inquire into the facts and report to the court under oath the result of his inquiry, accompanied by statement of facts and proofs.

Section 2 provides, that if the inspector finds the directors have refused, neglected or failed to provide accommodations as required " without valid cause for such refusal, neglect or failure," he shall so report to the court and thereupon the court is authorized to grant a rule on the school directors to appear and show cause why they should not be removed from office and others appointed in their stead until the next annual election for school directors.

Under this act the appellant and eighteen other taxable citizens, setting out in detail that the directors of Washington school district, within whose supervision fell Boyd's sub school district, had wilfully neglected and refused to provide building accommodations for the children of said sub district, petitioned the court for the appointment of an inspector. The court appointed Mr. Levi Taylor who was a non resident of the district, and his selection was entirely satisfactory to the school directors. He went upon the ground, and for three days investigated, heard patiently all the proofs and allegations of both parties, and after deliberate consideration, reported to the court that the directors had without valid cause failed to provide adequate accommodation for the school children of the sub district. He sets forth fully the reasons for his report, and accompanies it with statements of facts and proofs as required by the act. On this report the court granted a rule on the directors to show cause why they should not be removed from office. To this rule, one of the directors, G. S. Walker, made answer, in substance admitting the correctness of the report of the inspector, but being in a minority, averring that he was powerless to remedy the evil complained of by the petitioners. . The remaining five directors made answer averring that, in the exercise of their best judgment and discretion, they had provided a school building ample for the accommodation of all the children of the district. They set out in particular the number of children, their distance from the schoolhouse, and the capacity of the building, and aver under oath that they have performed their full duty to the best of their judgment.

IN RE RULE UPON WALKER et al. ROSS' APPEAL. 27

1897.]                    Opinion of the Court.

The court below after full hearing discharged the rule and we have this appeal by petitioners, assigning for error the decree of the court.

Although the court below filed no opinion, we presume the decree was based on a proper construction of the act of 1893.

Up to the passage of this act, without citing the many cases which determined and defined the duties of school directors, the case of Roth v. Marshall, 158 Pa. 272, gives concisely the construction of the act of 1854 in all of them. In that case we said:

" The subject of controversy in this case is the location of a district schoolhouse. Reduced to its simplest terms, the question raised is whether the exercise of official discretion of a board of school directors shall be supervised and directed by a court of equity. If so, the selection of teachers and text-books, the fixing of the rate for the levy of school and building taxes, the arrangement of the course of study, together with other similar duties, will be hereafter done subject to the opinions of the courts. The administration of the school laws will in that case depend upon the discretion of a chancellor, whose decrees will be enforced by injunctions or mandatory order. Such a conclusion would do violence to the school laws, and to the well settled rules that fix the limits of official discretion. If an officer neglects or refuses to enter upon the discharge of a duty which the law imposes upon him, the courts will quicken or compel action by a writ of mandamus. If he goes beyond what the law requires, attempts that which is ultra vires, or abuses his discretion in any manner, the courts will restrain him by injunction. The ground intermediate these extremes is the legitimate range of official discretion within which the officer, on whom the law has cast a duty, may determine the manner of its performance."

But it is clear to our minds, the intent of the act of 1893 was to change the law to some extent, as it thus plainly stood under the act of 1854. Under that law, the court would compel the directors to act and restrain them from committing unlawful acts, but would not interfere with them in the exercise of their unquestionable .powers ; would not determine whether their discretion was wise. While from the beginning the policy of the state was to educate all the children of the

28 IN RE RULE UPON WALKER et al. ROSS' APPEAL.

Opinion of the Court.                    [179 Pa.

state, the administration of the school law was intrusted almost wholly to the particular locality constituting the school district. The advantages of the system for many years were far from uniform. In one district would be found excellent teachers, ample and comfortable school rooms, with suitable school apparatus, and a term of eight to ten months. In another district perhaps in the same county, would be found incapable teachers, rude and insufficient buildings, not supplied with any of the aids to teaching, such as globes, blackboards, and other school furniture, with a term of four months. The act of 1854 was intended to raise the character of the schools and stimulate uniformity; and all the legislation since that time has been for the promotion of the same end. Prior to 1874, the state appropriations for school purposes were comparatively small. Nearly the whole fund for building and school purposes was raised by local taxation in the respective districts. But in the constitution of 1874, section 1 of article X. directed that : "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this commonwealth above the age of six years may be educated, and shall appropriate at least $1,000,000 each year for that purpose." The school system had then been in operation forty years, yet statistics demonstrated that a large percentage of even Pennsylvania born children grown to manhood and womanhood under the public school system were illiterate. The school laws as administered had not accomplished nearly to the full extent the purpose of its founders. Hence the mandate of the new constitution. The implication is the fund raised by local taxation has not been sufficient; it must be liberally supplemented by state aid. The legislature has not limited the appropriations to the amount prescribed by the constitution. At the last session $5,500,000 were appropriated for common schools alone, to be apportioned among all the districts for the years 1895 and 1896. The object of these large appropriations was to add to the efficiency of the schools. It was not intended by increasing this efficiency to thereby wholly impose the increased expense on the districts to be raised by local taxation, and it is just as clear it was not intended the school districts should shift the burden on the state by largely reducing local taxation. If that were the result, nothing would be

IN RE RULE UPON WALKER et al. ROSS' APPEAL. 29

1897.]                    Opinion of the Court.

gained in efficiency. It will therefore be noticed in all the legislation pertaining to the subject since 1874, there has been manifest an intent on the part of the state, not only to stimulate local efficiency by large appropriations, but to compel it by closer supervision and some assumption of control on part of the state. The conditions annexed to the right of a school district to receive its share of the appropriation, laws for uniform text-books, the aid to normal schools for education of teachers, the compulsory education law and others, all show this dominant idea. And there is no doubt, however vaguely expressed, that the legislature intended by the act of 1893 to confer a certain power of supervision of the discretion of school boards on the state courts, which, under the act of 1854, they did not theretofore have.

The first part of section 1 says, if the directors " shall wilfully neglect or refuse " to provide houses, rooms or buildings, then on petition of ten or more taxable citizens, the court shall act. It is argued these words only give to the courts the same power they had exercised under the act of 1854. Standing by themselves this argument would be plausible; but the whole act must be considered in ascertaining its intent. We ought to assume to start with, that the legislature would not unnecessarily duplicate on the statute book a well established power already possessed by the courts; must assume that some change was intended. On reading further in the first section, we find the court is expressly authorized to appoint an inspector to inquire into the facts alleged in the complaint, and he shall make a personal inspection and investigation. This imposes upon the court the duty, through its own appointee, of investigation and putting upon record the facts and testimony. If the inspector then finds that " without valid cause " the directors have neglected or refused to perform their duty, he shall report. It will be noticed the words " wilfully neglected and refused " are here dropped, and the words " without valid cause " substituted; words not by any means importing the same thing. If a duty be enjoined on an officer, his refusal to perform it is wilful. He has no discretion as to its performance. But if he be commanded to do a certain act unless he have a valid cause for not doing it, and he then refuses for cause, the question is at once raised between him and his superior, whether

30 IN RE RULE UPON WALKER et al. ROSS' APPEAL.

Opinion of the Court. [179 Pa.

the cause is sufficient to excuse him in his disobedience; it brings the judgment and discretion of the subordinate at once under the supervision of his superior. And further reading of section 2 bears out this view; it says, the court is empowered to grant a rule on those directors who "have failed without justifiable excuse" to perform the duty enjoined. The material facts alleged here are not in dispute. The territory of the sub-district is about four and one half miles square; some of the children live two and one half miles from the schoolhouse as at present located; that a new schoolhouse, which is about being built, will be of sufficient capacity to accommodate all the pupils of the district; that to accommodate all those of the sub district residing an inconvenient distance from the schoolhouse, arrangements would be made for their instruction in nearer schools belonging to Washington school district. On these facts under the act of 1854, petitioners would have had no case. The court below would not have passed on the judgment of the directors. As said by our brother WILLIAMS in Nicklas' Petition, 146 Pa. 212, "If they furnish accommodations for all who apply, they have performed the duty which the act of 1854 imposes. In the performance of this statutory duty, the school directors must decide, in the exercise of their discretion, when a new schoolhouse becomes necessary and where it should be located." Under that act, the number of children of school age in a district did not determine the extent of the accommodations to be provided. Attendance was purely voluntary; now it is compulsory. And although the act of 1893 was adopted at the session preceding the passage of the compulsory education bill, yet the latter had been pressed for passage for several sessions, and that it would soon become a law was highly probable. It may be fairly presumed, this act was passed in view of the future necessity then imminent.

We are of the opinion the intent of the act of 1893 is to confer on the courts of common pleas of this state a power by this new proceeding to ascertain the facts and determine whether the directors have exercised a sound discretion in providing suitable building accommodations for all the school children of the district.

It is argued that the inspector's finding of fact is conclusive on the court below; that it had no power to set it aside. From

IN RE RULE UPON WALKER et al.  ROSS' APPEAL. 31

1897.]                    Opinion of the Court.

this we wholly dissent.  The inspector's findings that the neglect was wilful, without valid cause, and without justifiable excuse, were all inferences from the facts as reported by him. The whole case, on report being made, was in possession of the court, which could draw an opposite inference if it believed such inference was warranted.  Having dissented from the conclusions of the inspector, and being in a peculiarly favorable position to judge as to the correctness of the inspector's conclusions, and whether there was valid cause or justifiable excuse, it would be a rare case indeed, in which we, sitting as an appellate court, would undertake to correct the common pleas court's decree on the facts.  We certainly would not do so unless the disregard of duty had been as wilful as under the act of 1854 it was required to be, before we would review the exercise of discretion by the school board.  We have not passed on the question as to whether under act of 1893 any power of review of the decree of the common pleas is given to this court; at best such power is doubtful, unless in case of manifest abuse of discretion by the common pleas.

The decree of the court below is affirmed.