Yesenia MARRERO, Arlene Marrero, Richard Mojica and Christian Mojica, minors, by their parent and guardian Yollie TABALES; Yollie Tabales; Kathryn, Christine, William and Stephen Nolan, minors, by their parent and guardian William H. Nolan; William H. Nolan; Jeanene and Larry Little, minors, by their parent and guardian Karen H. Little; Karen H. Little; David and Zachary Maas, minor, by their parents and guardians Peter Maas and Lesley Carson; Peter Maas and Lesley Carson; Aspira, Inc. of Pennsylvania; Philadelphia Branch NAACP; City of Philadelphia, and School District of Philadelphia, Petitioners,

v.

COMMONWEALTH of Pennsylvania; General Assembly of the Commonwealth of Pennsylvania; President Pro Tempore of the Senate Mark S. Schweiker, in his official capacity; Speaker of the House of Representatives Matthew J. Ryan, in his official capacity; Governor of the Commonwealth of Pennsylvania Thomas J. Ridge, in his official capacity; Commonwealth of Pennsylvania State Board of Education; Commonwealth of Pennsylvania Department of Education; Secretary of Education Eugene Hickok, in his official capacity, Respondents.

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1997.

Decided March 2, 1998.

Sheryl L. Auerbach, Philadelphia, for petitioner, School Dist. of Philadelphia.

Michael Churchill, Philadelphia, for petitioners.

Richard Feder, Philadelphia, for petitioner, City of Philadelphia.

Edward F. Mannino, Philadelphia, for respondents, Gov. Ridge, State Bd. of Education, Dept. of Education and Secretary of Education, Eugene Hickok.

John P. Krill, Jr., Harrisburg, for respondent, General Assembly.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

Presently before this court for disposition are the preliminary objections of the Executive Branch Respondents[1] and the preliminary objections of the Legislative Branch Respondents[2] to a petition for review in the nature of an action for declaratory judgment[3] filed in our original jurisdiction by the City of Philadelphia, the School District of Philadelphia (School District), ASPIRA, Inc. of Pennsylvania, the Philadelphia Branch of the NAACP, and students and the parents of students in the School District[4] (collectively Petitioners[5]).

On February 24, 1997, Petitioners filed the instant petition for review seeking declarato-

---

1. The Commonwealth of Pennsylvania, Governor Thomas J. Ridge, the State Board of Education, the Department of Education and Secretary of Education Eugene Hickok comprise the "Executive Branch Respondents" in this case.

2. The General Assembly of the Commonwealth of Pennsylvania, President of the Senate Mark. S. Schweiker and Speaker of the House of Representatives Matthew J. Ryan comprise the "Legislative Branch Respondents" in this case. In the complaint, Lieutenant Governor Schweiker is designated as "President Pro Tempore" of the Senate. As the Legislative Branch Respondents correctly note in their preliminary objections, the Lieutenant Governor is the President of the Senate. *See* Pa. Const. art. IV, § 4. The President *Pro Tempore* of the Senate is a member of that body who is elected by the other members. *See* Pa. Const. art. II, § 9. However, based on our resolution of this matter, we need not reach this preliminary objection.

3. As the Executive Branch Respondents correctly raise in their preliminary objections, the instant action was erroneously initiated by the filing of a pleading styled as a complaint rather than a petition for review. *See, e.g.,* Pa.R.A.P. 1501, 1502; *Machipongo Land and Coal Co. v. Department of Environmental Resources,* 155 Pa. Cmwlth. 72, 624 A.2d 742 (1993), *rev'd on other grounds,* 538 Pa. 361, 648 A.2d 767 (1994) (Commonwealth Court's original jurisdiction provides for causes of action cognizable at common law including an action for declaratory judgment; such an action is commenced by filing a petition for review rather than a complaint). Accordingly, we sustain the preliminary objection to the extent that the complaint will be treated as a petition for review addressed to our original jurisdiction, it will be referred to as a "petition for review" in this opinion, and the parties will be referred to as "petitioners" and "respondents". Pa.R.A.P. 1501, 1502, 1513.

4. Yesenia and Arlene Marrero, Richard and Christian Mojica, Yollie Tabales, Kathryn, Christina, William, Stephen and William H. Nolan, Jeanene, Larry and Karen Little, David, Zachary and Peter Maas and Lesley Carson comprise the students and the parents of students in the School District.

5. On March 4, 1997, the Philadelphia Federation of Teachers, Local 3, AFL–CIO and its President and Guardian Ad Litem Ted Kirsch filed a petition to intervene as "party plaintiffs" in this action. On April 28, 1997, the petition for intervention was granted.

ry relief. Petitioners argue, in essence, that because the School District operates in an urban environment, it is required to educate a disproportionate number of the state's students who live in poverty, and its students have unique educational needs, which require the expenditure of greater financial resources. Because the School District operates in the financially over-burdened urban area with a disproportionately high tax burden, Petitioners claim that the School District is unable to rely on the local tax base to generate the necessary funding to meet the needs of its students. As a result, Petitioners allege that the Pennsylvania General Assembly should be compelled to appropriate more funds to the School District pursuant to the mandate contained in Article 3, Section 14 of the Pennsylvania Constitution [6].

In sum, Petitioners allege that: under the present statutory funding system, the Commonwealth of Pennsylvania does not provide the School District with adequate funding to support the educational programs necessary to meet the unique educational needs of its students; the Commonwealth of Pennsylvania does not provide the School District with the resources necessary to build and maintain the facilities and equipment to provide an adequate education or meet the needs of its students; and its students are thereby deprived of an adequate education in contravention of Article 3, Section 14 of the Pennsylvania Constitution. Accordingly, in the petition for review Petitioners ask this court to:

1. Declare that all school children in the City of Philadelphia have a right, pursuant to Article 3, Section 14 of the Pennsylvania Constitution and other statutes governing education in Pennsylvania, to a thorough and efficient system of public education;

2. Declare that the Pennsylvania Constitution and other statutes governing education in Pennsylvania require the Commonwealth of Pennsylvania to provide for an adequate system of public schools in the School District;

3. Declare that the Commonwealth of Pennsylvania has failed to fulfill its obligations to provide for an adequate system of public schools in the School District;

4. Declare that the present statutory scheme used to fund public education in the Commonwealth of Pennsylvania as applied to the School District violates Article 3, Section 14 of the Pennsylvania Constitution;

5. Declare that the Pennsylvania General Assembly must amend the present statutory scheme, or enact new legislation, so as to ensure that funding for the School District is adequate to meet the greater and distinct educational needs of its students;

6. Declare that, in amending the present statutory scheme or enacting new legislation, the Pennsylvania General Assembly must take into consideration the effect of unfunded and underfunded state mandates as applied to the School District;

7. Declare that, in amending the present statutory scheme or enacting new legislation, the Pennsylvania General Assembly must take into consideration the inability of the local tax base to generate sufficient revenue to compensate for inadequate state funding;

8. Declare that the Commonwealth of Pennsylvania is required to take all steps necessary to comply with the provisions of Article 3, Section 14 of the Pennsylvania Constitution which require it to provide for the maintenance and support of a thorough and efficient system of public education which serves the needs of the Commonwealth, including the students of the School District;

9. Award to Petitioners attorneys' fees and all reasonable costs to the extent permitted by law; and

10. Grant such other relief as this court may deem proper.

In response to the petition for review, the Executive Branch Respondents and the Legislative Branch Respondents filed the instant preliminary objections on March 27, 1997.

---

**6.** Article 3, Section 14 of the Pennsylvania Constitution provides:

The General Assembly shall provide for the maintenance and support of a thorough and

efficient system of public education to serve the needs of the Commonwealth.

In the preliminary objections, the Executive Branch Respondents assert:[7] (1) the claims raised by Petitioners are non-justiciable under the doctrine of separation of powers and the political question doctrine; (2) the Petitioners' claims are barred by sovereign immunity; (3) the Governor and the State Board of Education are unnecessary and improper Respondents in this action; (4) the City of Philadelphia and the School District lack the capacity to institute this action; (5) the claims of the City of Philadelphia fail to state a legally cognizable cause of action; (6) ASPIRA, Inc. of Pennsylvania and the Philadelphia Branch of the NAACP lack standing to institute this action; (7) the instant action should be stayed pending the resolution of *Pennsylvania Association of Rural and Small Schools et al. v. Ridge,* Docket No. 11 M.D.1991, which is now pending before this court and raises the same legal issues as are raised in this action; (8) the instant petition for review is improperly styled as a complaint rather than a petition for review as required by Pa.R.A.P. 1501, 1502 and 1511; and (9) the scandalous and impertinent material and the evidence pleaded in the petition for review should be stricken pursuant to Pa.R.Civ.P. No. 1028.

Likewise, in the instant preliminary objections the Legislative Branch Respondents contend:[8] (1) this action is non-justiciable based on the separation of powers doctrine and the political question doctrine; (2) the Petitioners' claims are barred by sovereign immunity; (3) ASPIRA, Inc. of Pennsylvania, the Philadelphia Branch of the NAACP and the School District lack standing to institute the instant action; (4) the petition for review fails to state a claim for which relief may be granted; and (5) the petition for review fails to plead with sufficient specificity the basis of its claims and fails to adequately specify the individual Legislative Branch Respondents named in this action.

■ Initially, we note that in ruling on preliminary objections, we must accept as true all well pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995). This court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.* With these standards in mind, we consider the Respondents' preliminary objections.

■ As noted above, in the petition for review Petitioners allege that the present statutory scheme for funding education enacted by the General Assembly, as applied to the School District, violates Article 3, Section 14 of the Pennsylvania Constitution. In the first preliminary objection, Respondents allege that the claims raised by Petitioners are non-justiciable under the doctrine of separation of powers and the political question doctrine. As a result, Respondents submit that Petitioners may not obtain the requested declaratory relief.

■ The provisions of the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531—7541, govern petitions for declaratory judgments. *Ronald H. Clark, Inc. v. Township of Hamilton,* 128 Pa.Cmwlth. 31, 562 A.2d 965 (1989). Declaratory judgments are not obtainable as a matter of right. *Id.* Rather, whether a court should exercise jurisdiction over a declaratory judgment proceeding is a matter of sound judicial discretion. *Id.* Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction. *Gulnac v. South Butler School District,* 526 Pa. 483, 587 A.2d 699 (1991); *Ruszin v. Department of Labor and Industry,* 675 A.2d 366 (Pa.Cmwlth.1996).

■ Section 7533 of the Declaratory Judgments Act provides, in pertinent part, that "[a]ny person ... whose rights, status, or

---

7. In the interest of clarity, we consolidate and reorder the preliminary objections raised by the Executive Branch Respondents.

8. In the interest of clarity, we also consolidate the preliminary objections raised by the Legislative Branch Respondents.

other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533. Under section 7533, constitutional challenges to a statute's validity, such as that raised in the instant matter, may be decided by declaratory judgment. *Parker v. Department of Labor and Industry,* 115 Pa.Cmwlth. 93, 540 A.2d 313 (1988), *aff'd,* 521 Pa. 531, 557 A.2d 1061 (1989). Accordingly, in the instant declaratory judgment action, this court's inquiry concerns the ascertainment of the rights of the parties and whether protection for the rights asserted by Petitioner's can be judicially molded. *Allegheny County v. Commonwealth of Pennsylvania,* 517 Pa. 65, 534 A.2d 760 (1987).

Herein, Respondents argue that this court is unable to grant the relief requested by Petitioners as the funding of the public school system is a matter which has been exclusively committed to the Pennsylvania General Assembly under Article 3, Section 14 of the Pennsylvania Constitution, and it is not subject to judicial review under the separation of powers doctrine or the political question doctrine. As the Pennsylvania Supreme Court has stated:

> Ordinarily, the exercise of the judiciary's power to review the constitutionality of legislative action does not offend the principle of separation of powers. See e.g., *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). There may be certain powers which our Constitution confers upon the legislative branch, however, which are not subject to judicial review. A challenge to the Legislature's exercise of a power which the Constitution commits exclusively to the Legislature presents a nonjusticiable "political question".

*Sweeney v. Tucker,* 473 Pa. 493, 508, 375 A.2d 698, 705 (1977).

In determining whether a case involves a political question, the Pennsylvania Supreme Court has adopted the following standards articulated by the United States Supreme Court in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962):

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Sweeney,* 473 Pa. at 510, 375 A.2d at 706, quoting *Baker,* 369 U.S. at 217, 82 S.Ct. 691. With these standards in mind, we now turn to consider whether the instant matter is justiciable, or instead presents a nonjusticiable political question.

As we have previously recognized:

> The common school system as we know it today finds its genesis in the Free School Act of 1834[, Act of April 1, 1834, P.L. 102]. By 1865 the concept of a free public school as a state institution had become firmly established, and was finally solidified as a constitutional standard in Article X, Section 1 of the Constitution of 1874 which directed the legislature to maintain "a thorough and efficient system of public schools." Thus, "[t]he power of the State over education ... falls into that class of powers which are made fundamental to our government." *Teachers' Tenure Act Cases,* 329 Pa. 213, 223, 197 A. 344, 352 (1938).

*Danson v. Casey,* 33 Pa.Cmwlth. 614, 382 A.2d 1238, 1240–41 (1978), *aff'd,* 484 Pa. 415, 399 A.2d 360 (1979). *See also Wilson v. Philadelphia School District,* 328 Pa. 225, 230, 195 A. 90, 94 (1937) ("Our common school system was not adopted in this state as it exists today until many years after the Revolution, though the Constitutions of

1776,[9] 1790,[10] and 1838,[11] and the laws recognized its vitally important part in our existence. After Thaddeus Stevens' and Governor Wolf's famous crusade for education, our schools became an integral part of our governmental system, as a *state* institution.... The Constitution of 1874 fortified it and directed the legislature to maintain 'a thorough and efficient system of public schools': Article X, Section 1.") (citations omitted and emphasis in original).

The Pennsylvania Supreme Court has described the circumstances underlying the adoption of this constitutional provision as follows:

Prior to 1874, the state appropriations for school purposes were comparatively small. Nearly the whole fund for building and school purposes was raised by local taxation in the respective districts. But in the constitution of 1874, section 1 of article X. directed that: "The General Assembly shall provide for the maintenance and support of a thorough and efficient system of public schools, wherein all the children of this commonwealth above the age of six years may be educated, and shall appropriate at least $1,000,000 each year for that purpose."[12] The school system had then been in operation forty years, yet statistics demonstrated that a large percentage of even Pennsylvania born children grown to manhood and womanhood under the public school system were illiterate. The school laws as administered had not accomplished nearly to the full extent the purpose of its founders. Hence the mandate of the new constitution. The implication is the fund raised by local taxation has not been sufficient; it must be liberally supplemented by state aid ... The object of these large appropriations was to add to the efficiency of the schools. It was not intended by increasing this efficiency to thereby wholly impose the increased expense on the districts to be raised by local taxation, and it is equally clear it was not intended the school districts should shift the burden on the state by largely reducing local taxation. If that were the result, nothing would be gained in efficiency. It will therefore be noticed in all the legislation pertaining on the subject since 1874, there has been manifest an intent on the part of the state, not only to stimulate local efficiency by large appropriations, but to compel it by closer supervision and some assumption of control on part of the state. The conditions annexed to the right of the school district to receive its share of the appropriation, laws for uniform text-books, the aid to normal schools for education of teachers, the compulsory education law and others, all show this dominant idea.

*Ross' Appeal*, 179 Pa. 24, 28–29, 36 A. 148, 149–50 (1897).

■ Thus, as presently enacted, Article 3, Section 14 of the Pennsylvania Constitution places an affirmative duty upon the General Assembly to provide for a "thorough and efficient system of public education". Pa. Const. art. 3, § 14. However, "[t]his mandate of our state constitution ... does not

9. The Pennsylvania Constitution of 1776 provided, in pertinent part:

**Section the Forty-fourth.** A school or schools shall be established in each county by the legislature, for the convenient instruction of youth, with such salaries to the masters paid by the public, as may enable them to instruct youth at low prices: And all useful learning shall be duly encouraged and promoted in one or more universities.
Pa. Const. of 1776, § 44.

10. Article VII, Section 1 of the Pennsylvania Constitution of 1790 provided:
**Sec. 1.** The legislature shall, as soon as conveniently may be, provide, by law, for the establishment of schools throughout the State, in such manner that the poor may be taught gratis.

Pa. Const. of 1790, art. VII, § 1.

11. Likewise, Article VII, Section 1 of the Pennsylvania Constitution of 1838 provided:
**Sec. 1.** The legislature shall, as soon as conveniently may be, provide by law for the establishment of schools throughout the State, in such manner that the poor may be taught gratis.
Pa. Const. of 1838, art. VII, § 1.

12. The present Pennsylvania Constitution, adopted by referendum in 1968, renumbered Article X, Section 1 as Article 3, Section 14, and substituted "education to serve the needs of the Commonwealth" for the provisions relating to the education of children over the age of six years and the annual appropriation of at least $1,000,000. Pa. Const. art. 3, § 14.

confer an individual right upon each student to a particular level or quality of education, but, instead, imposes a constitutional duty upon the *legislature* to provide for the maintenance of a thorough and efficient *system* of public schools throughout the Commonwealth. *Danson v. Casey,* 484 Pa. 415, 399 A.2d 360 (1979)." *Lisa H. v. State Board of Education,* 67 Pa.Cmwlth. 350, 447 A.2d 669, 673 (1982) (emphasis in original), *aff'd,* 502 Pa. 613, 467 A.2d 1127 (1983). *See also Agostine v. School District of Philadelphia,* 106 Pa.Cmwlth. 492, 527 A.2d 193, 195 (1987), *petition for allowance of appeal denied,* 517 Pa. 610, 536 A.2d 1334 (1987).

To this end, the General Assembly enacted the Public School Code of 1949 (School Code).[13] As the Pennsylvania Supreme Court has noted:

> [Article 3,] Section 14 places the responsibility of providing public education on the legislature. In meeting its responsibility the General Assembly has established a comprehensive legislative scheme governing the operation and administration of public education.

*Pennsylvania Federation of Teachers v. School District of Philadelphia,* 506 Pa. 196, 200, 484 A.2d, 751, 753 (1984). *See also Philadelphia Federation of Teachers v. Board of Education of the School District of Philadelphia,* 51 Pa.Cmwlth. 296, 414 A.2d 424, 426 (1980) ("The purpose of the School Code is to establish a thorough and efficient system of public education, to which every child has a right."); *Danson,* 382 A.2d at 1245 ("The purpose of the School Code is to establish a thorough and efficient system of public education, and every child has a right thereto."). Under this "comprehensive legislative scheme governing the operation and administration of public education," the General Assembly established and classified the School District[14], provided for the appointment of the Board of Public Education to oversee its operation,[15] and outlined when, how and under what conditions education is to be provided within the district[16].

---

**13.** Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101—27–2702.

**14.** Sections 201 and 202 of the School Code, 24 P.S. §§ 2–201, 2–202.

**15.** Sections 302, 302.1, 2102—2104 of the School Code, 24 P.S. §§ 3–302, 3–302.1, 21–2102—2104.

**16.** *See, e.g.,* section 290, and 290.1 of the School Code, *added by* Act of August 8, 1963, P.L. 564, *as amended,* 24 P.S. §§ 2–290, 2–290.1 (reorganizing the administrative units of the public school system and requiring the State Board of Education to develop an evaluation procedure to objectively measure the adequacy and efficiency of the educational programs offered by the public schools); section 5–501, 24 P.S. § 5–501 (requiring the board to establish, equip, furnish and maintain a sufficient number of elementary schools to educate all individuals between six and twenty-one years of age); sections 502—504, 24 P.S. §§ 5–502—504 (permitting the board to establish, equip, furnish and maintain other schools or departments such as high schools, trade schools, vocational schools, technical schools, cafeterias, kindergartens, libraries gymnasiums, playgrounds and schools for the physically and mentally handicapped); section 510, 24 P.S. § 5–510 (permitting the board to adopt and enforce rules and regulations regarding the management of its school affairs and the conduct of its superintendents, teachers, employees and students); section 511, 24 P.S. § 5–511 (requiring the board to adopt and enforce rules and regula-

tions regarding the management, supervision, control or prohibition of athletics, school publications, or other extra-curricular activities); sections 701—709, 2132, 24 P.S. §§ 7–701—709, 21–2132 (requiring the board to provide the necessary grounds and buildings to accommodate all the children between six and twenty-one years of age who attend school and permitting the board to acquire and dispose of facilities and land used for school purposes); sections 731—741, 24 P.S. §§ 7–731—741 (outlining the construction, repair and facilities to be provided in school buildings); sections 801—804, 24 P.S. § 8–801—804 (requiring the board to acquire all necessary books, furniture and supplies for the schools); sections 901–A—924–A, 24 P.S. §§ 9–951—974 (establishing, funding and outlining the operation of intermediate units); sections 1106—1133, 2103, 2108—2110, 24 P.S. §§ 11–1106—1133, 21—2103, 2108—2110 (requiring the board to employ the necessary qualified professional employees, substitutes and temporary professional employees to keep the public schools open and outlining the hiring, promotion and removal of such employees); sections 1142—1164, 24 P.S. §§ 11–1142—1164 (outlining the compensation to be paid to professional employee and school administrators); sections 1201—1214, 24 P.S. 12–1201—1214 (requiring the certification of teachers and outlining the types of certificates and requirements for certification); sections 1301—1302, 24 P.S. §§ 13–1301 –1302 (providing all individuals between six and 21 years of age may attend public schools); sections 1326—1333, 24 P.S. §§ 1326—1333 (requiring compul-

In order to finance the foregoing directives of the Public School Code, "[t]he statutory scheme by which Pennsylvania's public schools are financed creates two primary sources of funding—state subsidies and local taxation. State subsidies are distributed by . . . the State Treasurer and State Secretary of Education to each of Pennsylvania's . . . school districts pursuant to a complex statutory formula. *See generally* School Code, 24 P.S. §§ 25–2501 et seq." *Danson*, 484 Pa. at 420–21, 399 A.2d at 363 (footnote omitted). However, local tax revenues are the major source of school funding in Pennsylvania. *Id.* at 421, 399 A.2d at 364. Because the School District is the only district in Pennsylvania which does not have the direct power to levy local taxes in support of its schools, the General Assembly has provided the City of Philadelphia with discretionary power to authorize the Board of Public Education to levy the taxes necessary to fund the School District's operations.[17] *Id.*

In *Danson*, as in the instant matter, the School District and parents of children in the district argued that the foregoing school funding scheme violated Article 3, Section 14 because the School District did not receive sufficient revenue to provide a "normal program of educational services" which were available to other children in Pennsylvania. *Id.* at 424, 399 A.2d at 365. Indeed, as the Pennsylvania Supreme Court noted:

[In this case,] Appellants contend that Article III, section 32 and Article III, section 14 of the Pennsylvania Constitution, by providing for "a thorough and efficient system of public education," guarantee them a constitutionally mandated minimum level of educational services, provided to the children of all other districts.

More than forty years ago, this Court recognized that because educational philosophy and needs change constantly, the

words "thorough and efficient" must not be narrowly construed. In *Teachers' Tenure Act Cases*, 329 Pa. [at 224], 197 A. [at 352], this Court characterized Article III, section 14 as a "positive mandate" that the Legislature "provide for the maintenance and support of a thorough and efficient system of public schools." The Court then explained the substance and effect of the Constitutional "mandate":

"In considering laws relating to the public school system, courts will not inquire into the reason, wisdom, or expediency of the legislative policy with regard to education, but whether the legislation has a reasonable relation to the purpose expressed in Article X, Section 1 [the predecessor provision to Article III, section 14], and whether the fruits or effects of such legislation impinge the Article by circumscribing it, or abridging its exercise by future legislatures within the field of 'a thorough and efficient system of public schools.' So implanted is this section of the Constitution in the life of the people as to make it impossible for a legislature to set up an educational policy which future legislatures cannot change. The very essence of this section is to enable successive legislatures to adopt a changing program to keep abreast of educational advances. The people have directed that the cause of public education cannot be fettered, but must evolute or retrograde with succeeding generations as the times prescribe. Therefore all matters, whether they be contracts bearing upon education, or legislative determinations of school policy or the scope of educational activity, everything directly related to the maintenance of a 'thorough and efficient system of public schools,' must at all times be subject to future legislative

sory school attendance, providing exceptions thereto, and imposing penalties for noncompliance); sections 1501 –1504, 24 P.S. 15–1501—1504 (requiring all public schools to be open for at least one hundred eighty days and setting the school week, vacations, and school terms); sections 1511—1523, 24 P.S. §§ 15–1511—1523 (outlining the prescribed course of study to be followed in the schools).

17. *See, e.g.,* Act of August 9, 1963, P.L. 640, *as amended,* 53 P.S. §§ 16101—16103.3; First Class City and School District Corporate Net Income Tax Act of 1969, Act of May 29, 1969, P.L. 47, 53 P.S. §§ 16111—16122; First Class School District Liquor Sales Tax Act of 1971, Act of June 10, 1971, P.L. 153, 53 P.S. §§ 16131—16140. *See also* Philadelphia Home Rule Charter, 351 Pa.Code §§ 12.12–303, 12.12–305.

control. One legislature cannot bind the hands of a subsequent one; otherwise we will not have a thorough and efficient system of public schools."

329 Pa. at 224–25, 197 A. at 352.

The Constitution "makes it impossible for a legislature to set up an educational policy which future legislatures cannot change" because "the very essence of this section is to enable successive legislatures to adopt a changing program to keep abreast of educational advances." It would be no less contrary to the "essence" of the Constitutional provision for this Court to bind future Legislatures and school boards to a present judicial view of a constitutionally required "normal" program of educational services. It is only through free experimentation that the best possible educational services can be achieved.

Even were this Court to attempt to define the specific components of a "thorough and efficient education" in a manner which would foresee the needs of the future, the only judicially manageable standard this court could adopt would be the rigid rule that each pupil must receive the same dollar expenditures. ... [H]owever, ... expenditures are not the exclusive yardstick of educational quality, or even of educational quantity.... The educational product is dependent upon many factors, including the wisdom of the expenditures as well as the efficiency and economy with which available resources are utilized.

*Danson,* 484 Pa. at 425–27, 399 A.2d at 366.

Thus, the Pennsylvania Supreme Court in *Danson* determined that:

In originally adopting the "thorough and efficient" amendment to the Pennsylvania Constitution of 1873, the framers considered and rejected the possibility of specifically requiring the Commonwealth's system of education be uniform. II Debates of the Convention to Amend the Constitution of Pennsylvania, 422–26 (1873). In-

stead, the framers endorsed the concept of local control to meet diverse local needs and took notice of the right of local communities to utilize local tax revenues to expand educational programs subsidized by the state.

As long as the legislative scheme for financing public education "has a reasonable relation" to "[providing] for the maintenance and support of a thorough and efficient system of public schools," *Teachers Tenure Act Cases* [329 Pa.] at 224, 197 A. at 352, the General Assembly has fulfilled its constitutional duty to the public school students of Philadelphia. The Legislature has enacted a financing scheme reasonably related to [the] maintenance and support of a system of public education in the Commonwealth of Pennsylvania. The framework is neutral with regard to the School District of Philadelphia and provides it with its fair share of state subsidy funds. This statutory scheme does not "*clearly, palpably,* and *plainly* violate the Constitution'"....

Thus, the Commonwealth has not failed to fulfill any duty it may have to the School District of Philadelphia to provide state subsidies to help finance public school education. To the extent appellants complain of inadequate local revenues, appellees, the State Treasurer and State Secretary of Education, cannot provide relief. Those two named officials of the executive branch of state government lack constitutional, statutory, or administrative authority to increase local Philadelphia school revenues.

*Id.* at 427–28, 399 A.2d at 367.[18] *See also Ross' Appeal,* 179 Pa. at 28–29, 36 A. at 150 ("The object of these large appropriations was to add to the efficiency of the schools. It was not intended by increasing this efficiency to thereby wholly impose the increased expense on the districts to be raised by local taxation, and it is equally clear it was not intended the school districts should shift

18. In fact, the Supreme Court noted that the School District arguably benefits from the foregoing statutory scheme as more sources of taxation are made available to it than to any other category of school district in the Commonwealth. *Danson,* 484 Pa. at 428, 399 A.2d at 367. In addition, the court noted that "[t]he Philadelphia School District's ability to obtain local tax funds is limited only by the ability of its appointed school board to convince City Council and the Mayor that the levies it requests are necessary for current operation of the school district. *See* [Philadelphia Home Rule] Charter §§ 12.12–303 and 12.12–305." *Id.*

the burden on the state by largely reducing local taxation. If that were the result, nothing would be gained in efficiency....").[19]

In conclusion, the Supreme Court in *Danson* stated:

> Whatever the source of the School District of Philadelphia's endemic ability to obtain the funds the School District deems are necessary for it to offer its students a "normal program of educational services," appellants by this litigation seek to shift the burden of supplying those revenues from local sources to the Commonwealth. This Court, however, may not abrogate or intrude upon the lawfully enacted scheme by which public education is funded, not only in Philadelphia, but throughout the Commonwealth.

*Danson*, 484 Pa. at 429, 399 A.2d at 367.

Herein, in the prayer for relief in the petition for review, Petitioners ask this court to declare, *inter alia:* that the Pennsylvania Constitution and statutes governing education require the Commonwealth to provide for an adequate system of public schools in the School District; that the Commonwealth has failed to fulfill its obligations to provide for an adequate system of public schools in the School District; and that the General Assembly must amend the present legislation or enact new legislation to ensure that funding for the School District makes adequate provision for the greater and special educational needs its students. In light of the foregoing, it is clear that we are unable to grant the requested relief as this matter is nonjusticiable.

From the foregoing discussion, we are able to glean the following salient principles. The purpose of Article 3, Section 14, and its predecessor provision, was to shift some of the control of the operation of the public school system in this Commonwealth from the various localities to the General Assembly. *Danson*,[20] *Ross' Appeal.* To defray a portion of the expenses incurred under this system, some funds are appropriated from the General Assembly for the operation of the schools. *Id.* It was never the intention of the drafters of these constitutional provisions to wrest control of the schools from the local authorities, and place all of the responsibility for their operation and funding on the General Assembly. *Id.* Rather, the General Assembly was charged with the responsibility to set up a "thorough and efficient *system* of public education" in the Commonwealth. *Lisa H.; Agostine.* The General Assembly has satisfied this constitutional mandate by enacting a number of statutes relating to the operation and funding of the public school system in both the Commonwealth and, in particular, in the City of Philadelphia. *Pennsylvania Federation of Teachers; Danson.*

In addition, Article 3, Section 14 places the responsibility for the maintenance and support of the public school system squarely in the hands of the legislature. *Danson; Teachers' Tenure Act Cases.* Thus, this court will not inquire into the reason, wisdom, or expediency of the legislative policy with regard to education, nor any matters relating to legislative determinations of school policy or the scope of educational activity. *Id.* In short, as the Supreme Court was unable to judicially define what constitutes a "normal program of educational services" in *Danson*, this court is likewise unable to judicially define what constitutes an "adequate" education or what funds are "adequate" to support such a program. These are matters which are exclusively within the purview of the General Assembly's powers, and they are not subject to intervention by

---

19. Indeed, as even the United States Supreme Court has noted:

"No single tradition in public education is more deeply rooted than local control over the operation of schools; local autonomy has long been thought essential both to the maintenance of community concern and support for public schools and to quality of the educational process.... [L]ocal control over the educational process affords citizens an opportunity to participate in decision-making, permits the structuring of school programs to fit local needs, and encourages 'experimentation, innovation, and a healthy competition for educational excellence.'"

*Martinez v. Bynum,* 461 U.S. 321, 329, 103 S.Ct. 1838, [1843], 75 L.Ed.2d 879 (1983) (citations omitted).

20. Petitioners attempt to distinguish *Danson*, thereby limiting its applicability to the instant case. We find petitioners' claims in this regard to be unpersuasive.

the judicial branch of our government. *Danson; Teachers' Tenure Act Cases; Ross' Appeal. See also School District of Newport Township v. State Tax Equalization Board,* 366 Pa. 603, 79 A.2d 641 (1951) (The appropriation and distribution of the school subsidy is the peculiar prerogative of the General Assembly for no other branch of our government has the power to appropriate funds).[21]

Thus, prominent on the surface of this case is a "textually demonstrable constitutional commitment of the issue to a coordinate political department", i.e., the General Assembly. *Baker; Sweeney.* Likewise, there is a lack of judicially manageable standards for resolving the instant claims, and it would be impossible to resolve the claims without making an initial policy determination of a kind which is clearly of legislative, and not judicial, discretion. *Baker; Sweeney.* In sum, we are precluded from addressing the merits of the claims underlying the instant action as the resolution of those issues have been solely committed to the discretion of the General Assembly under Article 3, Section 14 of the Pennsylvania Constitution.

21. Another decision worth noting is the Pennsylvania Supreme Court's opinion in *Commonwealth v. Hartman*, 17 Pa. 118 (1851) in which the court considered the constitutionality of the school laws of 1848 and 1849. These laws provided for the establishment of common schools throughout the Commonwealth, and required elected school directors to establish such schools within their respective localities. *Id.* It was alleged that these laws violated Article VII, Section 1 of the Pennsylvania Constitution of 1838 which provided that "the legislature shall, as soon as conveniently may be, provide by law for the establishment of schools throughout the state in such manner as the poor may be taught gratis." *Id.* In passing on the constitutionality of these laws, the Supreme Court stated, in pertinent part:

> The only ground on which this court has been urged to reverse the order of the Quarter Sessions, is, that the school law is unconstitutional. We are of opinion that there is nothing in that law, certainly nothing in that part of it to which our attention has been particularly called, which, in the slightest degree, contravenes the constitution. It is to be remembered, that the rule of interpretation for the state constitution differs totally from that which is applicable to the constitution of the United States. The latter instrument must have a strict construction; the former a liberal

Accordingly, we must sustain the Respondents' preliminary objections raising the issue of justiciability, and dismiss the instant petition for review with prejudice.[22]

### ORDER

AND NOW, this 2nd day of March, 1998, the preliminary objections of the Executive Branch Respondents and the Legislative Branch Respondents raising the issue of justiciability, and the preliminary objection of the Executive Branch raising the issue of the correct styling of the instant petition for review are sustained, and the Petitioners' petition for review in the nature of a complaint for declaratory judgment is dismissed with prejudice.

SMITH and LEADBETTER, JJ., did not participate in the decision in this case.

COLINS, President Judge, concurring.

I concur with the scholarly opinion of the majority regarding sustaining the preliminary objections. However, if the factual scenario, as advanced in the pleadings of petitioners are true, the appropriate remedy for

> one. Congress can pass no laws but those which the constitution authorizes either expressly or by clear implication; while the Assembly has jurisdiction of all subjects on which its legislation is not prohibited. The powers, not granted to the government of the Union, are withheld; but the state retains every attribute of sovereignty which is not taken away. In applying this principle to the present case, *it is enough to say, that there is no syllable in the constitution which forbids the legislature to provide for a system of general education in any way which they, in their own wisdom, may think best.* But it is argued, that for the purpose of promoting education, and carrying out the system of common schools, laws may be passed which will work intolerable wrong, and produce grievous hardship. The answer to this is, that a decent respect for a co-ordinate branch of the government, compels us to deny that any such danger can ever exist. But if a law, unjust in its operation, and nevertheless not forbidden by the constitution, should be enacted, *the remedy lies, not in an appeal to the judiciary, but to the people, who must apply the corrective themselves, since they have not entrusted the power to us.*
>
> *Id.* at 119 (emphasis added).

22. Because of our resolution of this issue, we need not address the other preliminary objections raised by Respondents in this matter.

the Courts would be the statutorily-prescribed remedy declaring the district a "financially distressed district" and to then undertake a Court-supervised restructuring of the district in totality, pursuant to Section 692 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, added by the Act of December 15, 1959, P.L. 1842, as *amended,* 24 P.S. § 6–692.

PELLEGRINI, Judge, dissenting.

I respectfully dissent from the majority's decision that the allegations raised by the School District are non-justiciable. The School District alleges that the Commonwealth has failed to provide for a "thorough and efficient system" of education as required by Article 3, Section 14 of the Pennsylvania Constitution. One of the duties of the judiciary is to ensure that the government functions within the bounds of the Constitution. *See Pennsylvania AFL–CIO v. Commonwealth,* 691 A.2d 1023 (Pa.Cmwlth. 1997). Because this case involves questions as to whether the General Assembly carried out its constitutional mandates, I believe it is justiciable. Accordingly, I would dismiss the Commonwealth's preliminary objections.